DETROIT IRON & STEEL CO. *v.* DETROIT GRAY IRON FOUNDRY CO.

1. EVIDENCE—RELEVANCY OF EVIDENCE.
    By "relevancy" is meant the logical relation between proposed evidence and a fact to be established.

2. SAME—TRIAL—ADMISSIBILITY OF EVIDENCE FOR TRIAL COURT.
    The question as to whether evidence offered is too remote from the transaction to be admissible is one for the trial court to determine, and will not ordinarily be revised, on appeal.

3. SAME—SALES—DELAY IN DELIVERY—EVIDENCE EXPLAINING DELAY ADMISSIBLE.
    In an action by the seller on a contract for the sale of pig iron to be delivered in equal monthly amounts within a certain period, where a part only was delivered within said period, and the buyer refused to accept the balance three months later, after the price had dropped, and the issue was as to which party was responsible for the delay in shipment, evidence as to amounts the seller sold, shipped, and had on hand at the end of each month was admissible for the purpose of showing that by selling and

---

[1] Evidence, 22 C. J. § 89; [2] Appeal and Error, 4 C. J. § 2785; Trial, 38 Cyc. p. 1514; [3] Sales, 35 Cyc. p. 590.

shipping its product at a higher price during said period to other customers it had put it out of its power to perform its contract with defendant.

Error to Wayne; Moynihan (Joseph A.), J.    Submitted June 22, 1927.    (Docket No. 46.)    Decided December 1, 1927.

Assumpsit by the Detroit Iron & Steel Company against the Detroit Gray Iron Foundry Company on a contract for the sale of iron.    Judgment for defendant.    Plaintiff brings error.    Affirmed.

*Dykema, Jones & Wheat,* for appellant.

*Connolly & Henderson,* for appellee.

.BIRD, J.    On September 5, 1920, plaintiff entered into a contract with defendant to deliver to it 2,991 tons of pig iron of three different grades at prices based upon a price of $35.53 per ton, for No. 2 iron. Deliveries were to be made to defendant in equal monthly amounts during the months of September, October, November, and December, 1920.    A total of 770 tons were delivered and paid for within the months specified.    Matters drifted along until March, 1921, when the price of pig iron had declined to a point lower than the contract price.    Plaintiff then demanded that defendant accept delivery of the iron, but it refused to do so.    This suit was then put in motion by plaintiff to recover its damages.

Plaintiff's Claim.    Plaintiff admits that the iron was not all delivered within the months specified, but says the delay was due to defendant's request that deliveries be deferred.    It claims it was ready and able at all times to make the deliveries within the four months, and would have done so save for defendant's request that the deliveries be deferred.

Defendant's Claim.    Defendant denies that it re-

quested that the deliveries be deferred.  It asserts that it was willing and anxious to receive deliveries at the times specified, and that it repeatedly requested deliveries during the time, but that plaintiff refused to make the balance of the deliveries until the market price was lower than the contract price, which was in March, 1921; that by reason of the delay it suffered a great loss, which it seeks to recover in this action.

These respective claims were in sharp conflict. They were presented to the jury and the jury resolved the doubt in favor of defendant and gave to it a verdict of $8,050.  Plaintiff was not content with the verdict, and has assigned three objections, which are within its assignments of error:

"(1) The court erred in requiring plaintiff over its objection to produce all its contracts for the sale of pig iron to other customers than the defendant in this suit, none of whom were parties to this suit, upon which contract shipments of pig iron had been made by the plaintiff during the period from September to December of 1920 inclusive, and to produce its records of all shipments upon such contracts.

"(2) The court erred in permitting counsel for defendant, over the plaintiff's objection, to cross-examine the plaintiff's witnesses, Maltby and Mittelstaedt, relative to the shipments of pig iron by the plaintiff to other of its customers than the defendant, not being parties to this suit, during the period from September to December of 1920, inclusive, and relative to the dates, prices, quantities, grades of iron and all other terms and conditions of the contracts and orders upon which those shipments were made.

"(3) The court erred in permitting counsel for defendant, over plaintiff's objection, to cross-examine plaintiff's witnesses, Maltby and Mittelstaedt, relative to the contents of the contracts and shipping records described in paragraph one above."

It was defendant's theory that plaintiff had oversold its production for the months specified; that it could, and did, obtain a much higher price for some of the

iron than the contract price from other customers, and, in order to establish that as the reason why deliveries were not made, it induced the court to issue an order requiring plaintiff to produce its books and papers showing its contract obligations with other customers for similar iron in September, October, November, and December, 1920, also showing its shipments during those months, and the amounts it had on hand at the end of the months. The court also permitted defendant to cross-examine the agents of plaintiff in regard to the contracts, the price obtained from other customers, and the extent of the shipments of similar iron to other customers.

It is claimed by plaintiff that the trial court was in error in this: that the contracts were with other parties not connected with this suit, and the matters solicited were purely collateral matters, and, therefore, not *relevant;* that their admission prejudiced the jury in defendant's behalf, and was error.

"By relevancy is meant the logical relation between proposed evidence and a fact to be established. All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested. * * * The question whether evidence offered is too remote from the transaction to be admissible is one for the trial court to determine, and will not ordinarily be revised on appeal." 10 R. C. L. p. 925.

The cardinal issue was which party was responsible for the deliveries not being made in the specified months. The testimony is in direct conflict on this question. Under such circumstances it is exceedingly difficult for a jury to determine which is right, especially where both parties are apparently of equal veracity. If the jury be allowed, however, to inquire into the subject-matter of the contract and the surrounding circumstances, and what the prices were for similar iron during the periods when deliveries should

have been made, and the extent of shipments to other parties, they are quite likely to arrive at a more correct solution of the issue. If the testimony disclosed that a large part of plaintiff's product had been sold to other customers at a price in excess of the contract price, which it did, these collateral facts would be very helpful in aiding the jury to determine which party was telling the truth, especially so if the jury possessed the ordinary sense of the great law of human selfishness. In other words, if plaintiff was able to command a better price for the iron than the contract price, and had yielded to the temptation to sell it to others, and had thereby put it out of its power to make deliveries to defendant in accordance with the contract, it would be very helpful in aiding the jury on the issue before them, namely, which party was telling the truth. Of course, these facts were collateral facts, but they were not so remote, under the circumstances, from the issue as to merit exclusion. We are of the opinion that the trial court committed no error in admitting the testimony.

The judgment will be affirmed, with costs of both courts to the defendant.

SHARPE, C. J., and FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.