### PEOPLE v WYNN

1. Witnesses—Criminal Law—Res Gestae Witnesses—Indorsement —Failure to Call—Harmless Error.

   Failure of the prosecution to indorse and produce at trial res gestae witnesses whose testimony would have been of little or no significance was harmless error; not every failure to indorse a res gestae witness or every failure to exercise due diligence to produce an indorsed witness requires reversal.

2. Witnesses—Criminal Law—Res Gestae Witnesses—Prosecutors —Failure to Call—Testimony Favorable to Defendant— Appeal and Error.

   The prosecution's failure to indorse and produce at trial a res gestae witness to a shooting who was standing in front of the complainant when the shot was fired and whose testimony could have been favorable to the defendant and would not have been merely cumulative is reversible error.

3. Witnesses—Criminal Law—Indorsement of Witnesses—Reasonable Doubt.

   Every reasonable doubt should be resolved in favor of indorsing and calling a witness when the defendant insists on his rights.

4. Appeal and Error—Criminal Law—Witnesses—Res Gestae Witnesses—Indorsement of Witnesses—Due Diligence—Necessary Witnesses—Evidentiary Hearing.

   Reversal and not remand for an evidentiary hearing is the appropriate remedy for failure of the prosecution to indorse and exercise due diligence to produce a res gestae witness at trial whose testimony was necessary where the trial court had already heard the prosecution's explanations for its failure and found them wanting.

## Appeal from Recorder's Court of Detroit, John Patrick O'Brien, J. Submitted Division 1 March

Reference for Points in Headnotes

[1–4] 41 Am Jur 2d, Indictment and Information §§ 55, 56, 60.

13, 1975, at Detroit. (Docket No. 19808.) Decided April 25, 1975. Leave to appeal applied for.

Willie Wynn was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Leonard Townsend,* for defendant on appeal.

Before: R. B. BURNS, P. J., and T. M. BURNS and R. M. MAHER, JJ.

T. M. BURNS, J. Defendant Willie Wynn was originally charged with assault with intent to commit murder, MCLA 750.83; MSA 28.278, and was convicted by a jury on January 30, 1974, of assault with intent to do great bodily harm less than murder. MCLA 750.84; MSA 28.279. He was sentenced on February 27, 1974, to a term of from 4-1/2 to 10 years in prison and now appeals.

The offense occurred on August 24, 1973, in the city of Detroit. Defendant went to the home of the complainant, Armstead Berry, in the company of James Moore and another person called Lavis, whose full name is unknown. Defendant's former girlfriend, Jeannette Riley, had allegedly been assaulted by Earl Berry, the brother of the complainant. The three men went to the Berry home to "straighten things out" with Earl Berry. James Moore entered the Berry home and asked for Earl Berry, Mrs. Riley's alleged assailant. While James

Moore was talking to Armstead Berry, the defendant entered the home and fired one shot. After the shot was fired, defendant was disarmed by persons inside the house. Defendant claimed at trial that the gun went off accidentally.

The prosecution failed to produce one indorsed witness, William Smith, complainant's brother-in-law, who was upstairs asleep at the time of the shooting. Furthermore, the prosecutor failed to indorse as witnesses James Moore, Lavis, and James Jones. According to the testimony of Police Officer Harrison Tolliver, one of the persons at the scene when Officer Tolliver arrived gave the name of James Jones to the police. Officer Tolliver testified that Jones was present during the altercation but had nothing to do with the shooting. He was told he could leave and was never produced. His name and address were taken and made a part of the preliminary complaint report. Police Officer Otis Evans testified that he had talked to James Moore and James Jones and asked them both to leave the scene.

Defendant moved at trial to have Moore, Lavis, and Jones indorsed as res gestae witnesses. After listening to argument from both parties, the trial court not only ruled that these three men were res gestae witnesses, but also held that William Smith was a res gestae witness. The court further ruled that there was no showing of due diligence to produce any of them and that their nonproduction would not be excused.

As mentioned earlier, William Smith was asleep upstairs at the time of the shooting. The complainant and another witness testified that the people upstairs could not have known who was involved in the shooting. In view of this testimony, it is clear that Smith's testimony would not have been significant even if he had been called.

The individual known only as Lavis was allegedly one of the parties that accompanied defendant to the Berry home. However, complainant testified at the preliminary examination that Lavis entered the home only after the shot went off. Judy Berry also testified to this at trial. Under these circumstances, we must conclude that since Lavis apparently did not witness the actual shooting, his testimony also would have been of little significance.

Next we come to the mysterious James Jones. Neither defendant nor complainant ever testified that anyone named James Jones was involved in the events prior to the shooting. Furthermore, none of the other witnesses who were present at the scene mentioned anyone named James Jones. The only time this name came up was during the testimony of the two police officers. In light of these facts, we cannot say that the testimony of this alleged witness was crucial to this case.

In its instructions the trial court told the jury that it was the duty of the people to produce all of the witnesses to a crime, and that if the people failed to do so, the jury "was at liberty to draw the inference that if those witnesses were produced, their testimony would be unfavorable to the people's case".

It is the clear trend of appellate authority in this state that every failure to indorse a res gestae witness and that every failure to exercise due diligence to produce an indorsed witness does not require reversal. *People v Debra Smith,* 59 Mich App 25; 228 NW2d 826 (1975), *People v Harris,* 56 Mich App 267; 224 NW2d 57 (1974), *People v James,* 51 Mich App 777; 216 NW2d 473 (1974), *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), *People v Romano,* 35 Mich App 135; 192

NW2d 271 (1971). In our opinion the failure of the prosecution to indorse and produce Smith, Lavis, and Jones was harmless error.

However, we cannot treat the prosecutor's failure to indorse and produce James Moore so lightly. In our opinion, the prosecution's failure to use due diligence to produce him was reversible error.

According to the testimony of the complainant, the defendant, and other witnesses, James Moore was not only in the room at the time of the shooting but actually was standing right in front of the complainant when the shot was fired. His testimony, if anyone's, could have been favorable to the defendant. The prosecution does not suggest that Mr. Moore's testimony would have been merely cumulative, nor does it contest the trial court's ruling that due diligence had not been shown with respect to the prosecution's attempts to locate him. Although the question may be a close one, every reasonable doubt must be resolved in favor of indorsing and calling a witness when the defendant insists on his rights. *People v Harrison,* 44 Mich App 578, 593; 205 NW2d 900 (1973), *People v Kayne,* 268 Mich 186; 255 NW 758 (1934). We hold, therefore, that James Moore was a res gestae witness and consequently that it was reversible error to fail to indorse his name on the information and call him as a prosecution witness.

Before closing, we wish to point out why reversal is the appropriate remedy in this case rather than a remand for an evidentiary hearing pursuant to *People v Robinson, supra. Robinson* is distinguishable from the case at bar since in *Robinson* the issue of a missing res gestae witness was not raised at trial. In the instant case, the issue was not only raised at trial, but the trial court

heard the prosecution's explanations as to why it could not produce the witness or why it did not indorse him. Therefore, since the trial court has already heard the prosecution's explanations and found them wanting, a remand for an evidentiary hearing would serve no useful purpose. Thus a reversal of defendant's conviction and grant of a new trial is the most appropriate course of action in this case.

Reversed and remanded for a new trial.