PEOPLE v KHAN

1. APPEAL AND ERROR—CRIMINAL LAW—PRESERVING QUESTION—MO-
   TION FOR NEW TRIAL—WITNESSES—RES GESTAE WITNESSES—
   NONPRODUCTION OF WITNESSES.

   A defendant desiring reversal or a new trial because of the
   prosecutor's failure to produce res gestae and indorsed wit-
   nesses shall, before filing his brief on appeal, move the trial
   court for a new trial; where the defendant does not so move,
   the issue is not properly before the Court of Appeals.

2. CRIMINAL LAW—CRIMINAL SEXUAL CONDUCT IN THIRD DEGREE—
   RAPE—EVIDENCE—RIFLE—FORCE—RELEVANCY OF EVIDENCE—
   THREATS—STATUTES.

   A complainant's testimony as to a defendant's handling of a rifle
   immediately prior to the defendant's sexual advances toward
   the complainant was relevant and material evidence and was
   properly admitted in the trial court's discretion at the defend-
   ant's trial for criminal sexual conduct in the third degree
   because that offense requires sexual penetration accompanied
   by force or coercion, and the jury could have considered the
   availability of the rifle together with the defendant's previous
   threatening words and deeds as justifying the complainant's
   belief that the defendant had the present ability to execute
   those threats (MCLA 750.520b[1] [f] [i], [ii], 750.520d[1] [b]; MSA
   28.788[2] [1] [f] [i], [ii], 28.788[4] [1] [b]).

3. CRIMINAL LAW—CRIMINAL SEXUAL CONDUCT—RAPE—COMPLAIN-
   ANT'S PREVIOUS SEXUAL EXPERIENCES—EVIDENCE—EXCLUSION
   OF EVIDENCE—STATUTES.

   Exclusion of evidence of a complainant's previous sexual experi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 555, 556.
[2] 65 Am Jur 2d, Rape § 70.
[3] 65 Am Jur 2d, Rape § 82.
[4] 65 Am Jur 2d, Rape § 85.
   Consent: admissibility of prosecution evidence on issue of consent,
      that rape victim was a virgin, absent defense attack on her
      chastity. 35 ALR3d 1452.
[5] 65 Am Jur 2d, Rape § 88.

ences with persons other than defendant who was being tried for criminal sexual conduct in the third degree was not error where (1) the complainant's previous sexual encounters with persons other than the defendant would have no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, (2) the record discloses no demonstrated, specific need for the evidence, and (3) the trial court permitted the asking of specific questions designed to show motive and allowed the issue of motive to reach the jury during closing argument (MCLA 750.520j; MSA 28.788[10]).

4. CRIMINAL LAW—CRIMINAL SEXUAL CONDUCT—RAPE—COMPLAINANT'S PREVIOUS SEXUAL EXPERIENCES—CONSENT—EVIDENCE—EXCLUSION OF EVIDENCE—STATUTES.

There was no abuse of a trial court's discretion in its refusal to allow the admission of evidence of a complainant's previous sexual experiences with persons other than a defendant charged with third-degree criminal sexual conduct to show that the complainant had consented to sex with the defendant where no logical inference could fairly be drawn from the complainant's sexual background which would shed light on the issue of consensual sex with the defendant on the date in question (MCLA 750.520j; MSA 28.788[10]).

5. CRIMINAL LAW—EVIDENCE—CRIMINAL SEXUAL CONDUCT—RAPE—ADMISSION OF EVIDENCE—APPEAL AND ERROR.

The admission into evidence, at a defendant's trial for criminal sexual conduct in the third degree, over the defendant's objection, of a pair of ripped, semen- and blood-stained underpants without first requiring the prosecution to establish that the complainant wore the item on the night in question was error.

Appeal from Recorder's Court of Detroit, Michael J. Connor, J. Submitted June 21, 1977, at Detroit. (Docket No. 28122.) Decided January 5, 1978. Leave to appeal denied, 402 Mich —.

Anwar A. Khan was convicted of third-degree criminal sexual conduct. Defendant appeals. Affirmed in part and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Stephen H. Boak,* Director, Prosecutor's Repeat Offenders Bureau, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Ward F. McDonough, Jr.,* for defendant on appeal.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

PER CURIAM. A Detroit Recorder's Court jury convicted defendant of third-degree criminal sexual conduct. MCLA 750.520d(1)(b); MSA 28.788(4)(1)(b) (sexual penetration accomplished by force or coercion). He appeals.

## I.

On August 25, 1975, between 6 and 7 p.m., the complaining witness, Angela B., her sister Terry and their infant children were looking for an apartment to rent on West Grand Boulevard. There they encountered their brother, Timothy, and the defendant. Defendant offered the women and children a ride home because it had begun to rain. Defendant then suggested that they stop for a drink and that immediately after he would drive them home; the women agreed. After arriving at the bar, defendant soon expressed dissatisfaction with the shortage of available pool tables. At his suggestion, he drove the group (four adults and two children) to another bar. The group did not leave this bar until 1 or 1:30 a.m., despite the women's requests for an early departure.

Instead of driving the women and children home, defendant drove the group (which now in-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cluded another man, one "Little Jesus" or "Jessie") to an address on Chamberlain where defendant and Timothy resided. Defendant parked the car in the alley behind the garage. Timothy unlocked the garage and entered followed by defendant; the rest remained outside.

Upon hearing a conversation, Angela peered through the opening between the garage doors and saw defendant pointing a rifle at Timothy. She began to cry, whereupon defendant dropped the rifle and emerged from the garage with Timothy. On seeing Angela in tears, Timothy summoned an ambulance for her, but when it arrived she said she did not want to go to the hospital; thus, Timothy sent the ambulance away. Defendant then threatened to kill Terry if anything happened to Angela. At this, Terry ran from the scene with her child. Defendant directed "Little Jesus" to follow Terry and encourage her to return. Defendant then told Timothy to take Angela's child and attempt to locate Terry; Timothy complied.

According to the complainant, defendant then pulled her into the garage, flipped the overhead latch on the doors and began to undo her slacks. Upon complainant's resistance, defendant slapped her across her face and neck. He then allegedly forced himself upon her, requiring her to participate in acts of intercourse and fellatio. Unable to reach the door-latch overhead, complainant eventually escaped by suggesting to defendant that she heard someone tampering with his car. As he unlocked the doors, she ran from the garage and grabbed her child from the side of her brother who had since returned and fallen asleep in the car. Thus awakened, the brother chased complainant, eventually catching her a few blocks away. She allowed him to hail her a cab. Shortly before 4

a.m., she arrived at her parents' home and tearfully reported the rape to her mother. The next morning, at her father behest, complainant related the incident to the police.

## II.

Defendant's first argument, concerning the prosecutor's nonproduction of certain res gestae and indorsed witnesses, is not properly before us, defendant having failed to file a motion for new trial before the lower court. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). Although the trial court, at the instance of defendant, took evidence and rendered findings on the failure to produce some of these witnesses, *Robinson* remains unsatisfied. See *People v Allen,* 76 Mich App 585; 257 NW2d 263 (1977), *People v Ebejer,* 66 Mich App 333; 239 NW2d 604 (1976), and *People v Carpenter,* 69 Mich App 81; 244 NW2d 338 (1976). But see, *People v Schwartz,* 62 Mich App 188; 233 NW2d 517 (1975), *People v Wynn,* 60 Mich App 636; 231 NW2d 269 (1975), *People v Jones,* 65 Mich App 619; 237 NW2d 584 (1975), and *People v Staples,* 68 Mich App 220; 242 NW2d 74 (1976).

## III.

Next, defendant claims that the trial court erred in permitting, over defense objection, complainant's testimony regarding defendant's handling of the rifle. Defendant assails the relevance and materiality of the testimony, given the absence of any showing at trial that defendant ever threatened complainant with the rifle or that she noted its presence during the alleged crime.

The argument is not well taken. Third-degree criminal sexual conduct requires sexual penetra-

tion accomplished by force or coercion. MCLA 750.520d(1)(b); MSA 28.788(4)(1)(b). This "includes *but is not limited to*" situations where "the actor overcomes the victim through the actual application of physical force or physical violence" or where "the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats". MCLA 750.520b(1)(f)(i) and (ii); MSA 28.788(2)(1)(f)(i) and (ii). (Emphasis added.)

In the instant case, complainant had witnessed defendant pointing a rifle at her brother, had heard defendant threaten to kill her sister and had received a hard slap[1] from defendant when she spurned his advances. At the very least, then, the jury could have interpreted the slap as a "threat * * * to use force or violence" and it could have considered the availability of the rifle together with defendant's previous threatening words and deeds as justifying a belief in complainant that defendant "ha[d] the present ability to execute these threats". Accordingly, we rule that testimony concerning the rifle constituted relevant and material evidence, *People v Oliphant,* 399 Mich 472, 488–489; 250 NW2d 443 (1976), properly admitted in the trial court's discretion. *Id.* at 490, *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973).

## IV.

Defendant's third assignment of error is answered by *People v Hooper,* 50 Mich App 186, 197; 212 NW2d 786 (1973), *People v Gant,* 48 Mich App

---

[1] Complainant's mother, father and the examining physician testified that a reddish bruise appeared along complainant's face and neck.

5, 8–10; 209 NW2d 874 (1973), and *People v Ford,* 59 Mich App 35, 39; 228 NW2d 533 (1975).

## V.

Defendant next raises an issue that has sparked considerable controversy among recent panels of this Court, namely, the extent to which MCLA 750.520j; MSA 28.788(10)[2] may constitutionally exclude evidence of complainant's previous sexual experiences with persons other than the defendant. See *People v Dawsey,* 76 Mich App 741; 257 NW2d 236 (1977), *People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977), and *People v Patterson,* 79 Mich App 393; 262 NW2d 835 (1977). Relying on *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), defendant maintains that the cited provision infringed his Sixth Amendment right to confront adverse witnesses.

In *Davis,* the United States Supreme Court held that on the facts at bar an Alaska statute and court rule designed to encourage juvenile rehabilitation by shielding a youth's record of delinquency

---

[2] "Sec. 520j. (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) Evidence of the victim's past sexual conduct with the actor.

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)." MCLA 750.520j; MSA 28.788(10).

from trial scrutiny must yield to a defendant's right to uncover the potential bias of an adverse witness:

"We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. *Cf. In re Gault,* 387 US 1, 25, [87 S Ct 1428; 18 L Ed 2d 527] (1967). Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." 415 US at 319; 94 S Ct at 1112; 39 L Ed 2d at 355.

In a comparable setting, the Court again resorted to a balancing of competing interests when, in the face of a claim of executive privilege, it refused to quash the Watergate Special Prosecutor's subpoena seeking "demonstrably relevant" evidence:

"[T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts. A President's acknowledged need for confidentiality in the communications of his office is general in nature,

whereas the constitutional need for production of *relevant* evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated. The President's broad interest in confidentiality of communications will not be vitiated by disclosure of a limited number of conversations *preliminarily shown* to have some bearing on the pending criminal cases.

"We conclude that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the *demonstrated, specific need* for evidence in a pending criminal trial." *United States v Nixon,* 418 US 683, 712–713; 94 S Ct 3090, 3110; 41 L Ed 1039, 1066–1067 (1974). (Emphasis supplied.)

Returning to MCLA 750.520j(1); MSA 28.788(10)(1), we observe that this provision—an integral part of Michigan's criminal sexual conduct act—represents an explicit legislative decision to eliminate trial practices under former law which had effectually frustrated society's vital interests in the prosecution of sexual crimes. In the past, countless victims, already scarred by the emotional (and often physical) trauma of rape, refused to report the crime or testify for fear that the trial proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on aspects of an inquisition in which complainant would be required to acknowledge and justify her sexual past.

Thus, the evidentiary exclusion of MCLA 750.520j; MSA 28.788(10), like comparable provisions in statutes of other jurisdictions, strives to foster a number of salutary purposes.

"Primarily, * * * [rape shield statutes] serve the substantial interests of the state in guarding the complainant's sexual privacy and protecting her from undue harassment. In line with these goals, they encourage the victim to report the assault and assist in bringing the offender to justice by testifying against him in court. Insofar as the laws in fact increase the number of prosecutions, they support the government's aim of deterring would-be rapists as well as its interest in going after actual suspects. These statutes are also intended, however, to bar evidence that may distract and inflame jurors and is of only arguable probative worth. To the degree that they aid in achieving just convictions and preventing acquittals based on prejudice, they naturally further the truth-determining function of trials in addition to more collateral ends. In order to assess the rape shield laws one must ask whether these state interests, as embodied in particular statutory standards applied in specific factual contexts, outweigh the defendant's valued right to meet the prosecution's case with proof that he is indeed innocent. Where the balance inclines toward the accused, any provision excluding his evidence cannot be squared with the Constitution." Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* (Hereafter *"Rape Cases in the Courtroom"*), 77 Col L Rev 1, 54–55 (1977). (Footnotes omitted.)

In the present case, defendant cites two instances where the trial court allegedly barred evidence of complainant's prior sexual conduct. As these instances raise separate questions, we treat each separately.

Upon cross-examination by defense counsel, complainant testified that she was an 18-year-old, unmarried mother of two children and that she originally was unwilling to press charges but did so at her father's request. She denied that her father forced her to report the incident and denied ever having pressed rape charges before. The court, citing the statute, prohibited defendant's

attorney from asking complainant if she knew the fathers of her children. On grounds of irrelevance, the court also sustained objections to defense questions regarding when and why she moved from her parents' home.

Later, out of hearing of the jury, defense counsel objected to the court's restrictions on cross-examination:

"MR. SAPERSTEIN: *[Defense attorney]* Before the jury returns, Your Honor, I would like to make an objection on the record at this point here with respect to the matters in which I was limited to on cross-examination. I realize this is a new statute which we are working with, the new rape law, and as far as I am concerned, I think there is some question as to the Constitutionality of it that can resolve itself at some other time, but the Court is not allowing me to go into this witness's background in relationship with her father, because I believe that her father is in this instance the instigator, and I would like to go into that in more detail, Your Honor, and by not being allowed to do this, Your Honor, not going into her background under the statute,—the new statute, that I feel that I am being denied a defense being his rights of confrontation of witnesses, due process and equal protection, and I just want to make that statement on the record."

In response, the court quoted the statute and then noted:

"*[THE COURT]* Now the only limitations the Court really has placed on your examination of the witness, Miss B * * * , was [sic] your questions relating to her children, whether or not the father was known and so on. Now I think, as a matter of fact, as to those questions, Counsel clearly knew that they were inadmissible, and inasmuch as we are making a record, I wanted that clear on the record. And as far as the Court is concerned, it is only as clear as to those questions that objections have been sustained and, as a

matter of fact, Counsel has gone considerably beyond what the statute would allow. As to your questions concerning the effect her father has had on the complaint to the police department, if anything, that is a collateral issue, but beyond that the witness has indicated that her father was one of the moving sources and forces behind her complaint to the police department. The jury is well aware of that. To go any deeper into that, which is a collateral matter, I think would serve no purpose. Notwithstanding, if you had some specific question that you desire to direct to her, then certainly you may ask that question. I know of no matter in which I have limited counsel in that regard. Notwithstanding, the relation she had with her father, for instance, as to whether or not he has ever struck her is so over broad as to have absolutely no bearing upon any of the issues that are involved in this case.

"MR. SAPERSTEIN: My argument at this time was not so much with the Court, but with the rape law and so forth. There are no other cases, no other type of defense which spells out what you can do, or limitations on it as this rape law does.

"THE COURT: Well, I am not going to defend the statute, the statute is there, but it does seem to the Court that there is no logical inference that can be drawn from the fact of a prior sexual experience as opposed to conduct on a specific instance.

"The witness is present, subject to confrontation and cross-examination. Her testimony, if believed, would certainly indicate that, regardless of what kind of sexual conduct she is engaged in in the past [sic]. But on this particular instance it was her desire not to engage in any sexual conduct with this Defendant, and her will was overborne, and his affections or attentions were forced upon her person. And under those circumstances, the statute—and I think rightfully so, while that is unimportant—would indicate that her prior sexual conduct should not be the determining factor in the minds of the jury. It is his actions that the jury should hear in determining and not hers.

"All right, you may bring the jury back."

The transcript discloses that on cross-examination of complainant and her father, defendant's attorney did not again pose questions relating to complainant's motive for bringing the charges. In closing argument, however, counsel did hypothesize "that perhaps * * * [complainant's] father, saw a way of bringing his family back together again" by encouraging complainant to press charges.

On this record, we agree with the trial court in holding that defendant has failed to make a preliminary showing of the logical nexus between complainant's past sexual conduct and the claim of a parentally-inspired motive for pressing charges. Here, complainant's previous sexual encounters with persons other than defendant have no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Proposed Michigan Rule of Evidence 401. See also *People v Nichols,* 341 Mich 311, 331; 67 NW2d 230 (1954), *People v Becker,* 300 Mich 562, 565; 2 NW2d 503 (1942), *Stewart v People,* 23 Mich 63, 75 (1871), and *Detroit Iron & Steel Co v Detroit Gray Iron Foundry Co,* 240 Mich 677, 680; 216 NW 391 (1927). Since the record discloses no "demonstrated, specific need for evidence in a * * * criminal trial", *cf., Nixon, supra,* we perceive no error of a constitutional dimension. Moreover, since the trial court permitted the asking of specific questions designed to show motive and allowed the issue of motive to reach the jury during closing argument, we perceive no error whatsoever.

With regard to the other claimed instance of an unconstitutional exclusion of evidence, the trial transcript discloses a pertinent colloquy occurring in the jury's absence:

"THE COURT: All right, there is one other thing I wanted to place on the record also, we have neglected to do that.

"Mr. Saperstein did indicate at the bench in relation to the information he had hoped to elicit from Mr. B * * * [complainant's brother] that he believed would be contained in the transcript—

"MR. SAPERSTEIN: That is Timothy B * * * ?

"THE COURT: Yes, Timothy B * * * —that he believed would be contained in the transcript[3] was a statement, and I am quoting now when he was talking to sister, Angela, he was alleged to have said something along the lines that 'You ought to drop the charges. What difference does it make? You fucked half the neighborhood anyway.' And it was * * * [Prosecutor] Kenny's recollection that he, while that was said, he didn't believe, at any rate, that it was Mr. Timothy B * * * who made that statement. And, again, the Court has already made a ruling that it was a collateral issue at any rate; and, secondly, it would be extremely prejudicial to the People and, again, would go to the face of the statute which indicates that prior sexual conduct is not a proper issue for the jury's consideration; and * * * of course this would be unreliable inasmuch as it would be hearsay information.

"But, again, your objections are noted."

Defendant did not testify at trial; instead he offered the testimony of one witness who related defendant's and complainant's behavior at the second bar.[4] During closing argument, defendant's

---

[3] The "transcript" apparently refers to a transcript of a tape-recorded telephone conversation of September 11, 1975, between complainant and her brother Timothy, urging her to drop the charges against defendant. Timothy B. was later arrested on a charge of obstruction of justice, but the record does not reveal the resolution of this charge. Two others, however, were convicted on obstruction-of-justice charges stemming from similar pressures on complainant to recant.

[4] This witness, a waitress at the second bar, testified that complainant and defendant "were sitting at a table kissing". Earlier, complainant had testified on cross-examination:

"Q [Mr. Saperstein] * * * [W]ere you so to speak making out with Mr. Khan in the bars?

attorney offered a defense of consent.[5]

"A He was pulling on me, but I wasn't making out with him, no.

"Q You weren't kissing him or anything like that in the bar?

"A He would pull me and hold me there. I wouldn't have no choice, I would pull away and I told him to stop, and he would tell me, you don't like me, or something like that. But I wouldn't pull on him or kiss him."

[5] Although the statute is silent on the defense of consent, we believe it impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither "mentally defective", MCLA 750.520a(c); MSA 28.788(1)(c), "mentally incapacitated", MCLA 750.520a(d); MSA 28.788(1)(d), nor "physically helpless", MCLA 750.520a(e); MSA 28.788(1)(e), is not criminal sexual conduct. Otherwise, there would be no reason for the foregoing definitional sections to employ terms referring to an ability to appraise or control one's conduct or to communicate unwillingness to an act. Nor would there be any apparent reason for permitting the discretionary use of evidence of the victim's past sexual conduct with the actor, MCLA 750.520j(1)(a); MSA 28.788(10)(1)(a), other than to show previous instances of consensual sex. *See,* Note, 23 Wayne L Rev 203, 215 Fn 94 (1976). *See also, People v Oliphant,* 399 Mich 472, 510, n 8; 250 NW2d 443 (1976) (LEVIN, J., dissenting):

"The new criminal sexual conduct act does not speak in terms of the victim's consent or will but of whether 'force or coercion is used to accomplish the sexual penetration' or 'contact'. MCLA 750.520a, *et seq.;* MSA 28.788(1) *et seq.* The act provides that the 'victim need not resist the actor'. MCLA 750.520i; MSA 28.788(9).

"The primary issue is whether force or coercion is used; non-consent may, it would appear, be an inference from evidence of force or coercion. Consent would, of course, be a defense. *See generally* Robinson, *Civil and Criminal Evidence,* 21 Wayne L Rev 437, 484 (1975)." *Compare, People v Howell,* 396 Mich 16, 23; 238 NW2d 148 (1976).

The correct view, we believe, is advanced in Nordby, *Legal Effects of Proposed Rape Reform Bills: S B 1207 and H B 5802,* submitted to the House Judiciary Committee on April 23, 1974:

"The present law imposes an extra and unfair burden on the prosecutor by requiring a showing of nonconsent in * * * [rape] cases. If actual force or threats of force sufficient to meet the 'force' requirement can be shown, it is redundant to also require a separate showing of 'nonconsent' as part of the case in chief. The laws of a few other states recognize the injustice in this situation by providing that proof of the victim's consent can be shown as an *affirmative defense* but need not be established beyond a reasonable doubt as part of the prosecutor's case. See, Calif. Penal Code § 261; Ohio Statutes § 2907.02; Pennsylvania Statutes § 3121. When the victim is threatened with a dangerous weapon, or is beaten, robbed or kidnapped, the possibility of her willingly consenting to sexual intercourse is so unlikely that it ought only be raised as an alternative theory for the defense rather than have to be shown from the outset. This is the approach of the proposed reform legislation." *Id.* at 7–8. (Emphasis in original.)

In his appellate brief, defendant now claims (without elaboration) that "evidence of [complainant's] prior sexual conduct may logically be used to establish the probability of * * * consent". Defendant does not characterize the above, excluded evidence as that of reputation, *cf., People v Mc-Lean,* 71 Mich 309, 312; 38 NW 917 (1888), with *State ex rel Pope v Superior Court,* 113 Ariz 22, 29; 545 P2d 946, 953 (1976); nor does he suggest that the instant "proof of prior sexual conduct pertains narrowly to acts evincing a *pattern* of voluntary encounters characterized by distinctive facts similar to the current charges". Berger, *Rape Cases in the Courtroom, supra,* at 60. (Emphasis in original.) Furthermore, defendant does not even address the holdings below that the evidence should be omitted because (1) it raises a collateral issue; (2) it bears the strong potential for prejudice; and (3) it is unreliable hearsay.

In this context, then, with the evidence hewn in absolute terms and stemming from an uncertain source, we agree with the trial court that no logical inference can fairly be drawn from complainant's sexual background which would shed

Similarly, *see* the House Judiciary Committee analysis of Senate Bill 1207 (which bill eventually became the enrolled act) quoted in *People v Nelson,* (Amended Opinion), 79 Mich App 303, 318, f 31; 261 NW2d 299 (1977).

" '*The Manner in Which the Bill Addresses Itself to the Problem:*

*        *        *

" '5. *Non-Consent:* The bill eliminates the present requirement that the non-consent of the victim must be proved "beyond a reasonable doubt" at the outset of a "rape" trial.'

"One 'Argument For' the bill, presented in the same analysis, stated:

" 'The question as to whether or not the victim "consented" is not an issue in any felony other than rape. This bill would make the rape standard consistent with the standard for other felonies by allowing the victim to assess rationally the danger of injury or death and conduct herself/himself accordingly.' "

*Accord:* Comment, *Towards a Consent Standard in the Law of Rape,* 43 U Chi L Rev 613, 635 *ff.* (1976).

light on the issue of consensual sex with defendant on the date in question. See *People v Blackburn,* 56 Cal App 3d 685, 690–691; 128 Cal Rptr 864, 866–867 (1976):

"The relevance of past sexual conduct of the alleged victim of the rape with persons other than the defendant to the issue of her consent to a particular act of sexual intercourse with the defendant is slight at best. The historical rule allowing the evidence may be more a creature of a one-time male fantasy of the 'girls men date and the girls men marry' than one of logical inference."

Similarly, see Advisory Committee Note to Fed R Evid 404 which acknowledges "doubts of the basic relevancy" of sexual-conduct character evidence to show complainant's consent and recognizes that permitting such proof finds a basis "more in history and experience than in logic".

Even if, *arguendo,* we were to recognize some marginal relevance on the present record, we fail to perceive an abuse of discretion in the lower court's decision to exclude such evidence.

"The trial judge, here as whenever any evidence is offered for any purpose, enjoys the discretion of excluding relevant evidence if its probative value is outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury." *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973). (Footnote omitted.) To the same effect, see *People v Oliphant,* 399 Mich 472, 489–490; 250 NW2d 433 (1976).

Accordingly, without suggesting that MCLA 750.520j; MSA 28.788(10) is necessarily free of all constitutional infirmity, see Berger, *Rape Cases in the Courtroom, supra,* 77 Col L Rev 1, 56–69 (1977), and the proposed statute therein, § 1(b)(1)–

(7), at 97–99, we hold, as before, that absent demonstrably relevant evidence, defendant cannot require us to balance the previously cited state interests in promoting prosecution of sexual crimes against the fundamental requirements of the Confrontation Clause. *Cf., Davis v Alaska,* and *United States v Nixon, supra.*

## VI.

We agree with defendant's fifth appellate contention, namely, that the lower court erred reversibly in admitting, over objection, People's Exhibit No 1 (a pair of ripped, semen- and blood-stained underpants) without first establishing that complainant wore the item on the night in question. *People v Tobey,* 60 Mich App 420, 430; 231 NW2d 403 (1975). We, therefore, remand the cause on this issue for an evidentiary hearing wherein complainant can aver or deny that People's Exhibit No 1 was the undergarment she wore at the time in question. If she so avers, defendant's conviction is affirmed. Otherwise, defendant would be entitled to a new trial.

Defendant raises one other assignment of error, but we find it meritless.

Affirmed in part; remanded for proceedings consistent with Part VI of this opinion.