**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v SHARPE

Docket Nos. 155747-155748. Argued April 11, 2018 (Calendar No. 3). Decided July 10, 2018.

Lovell C. Sharpe was charged in the Wayne Circuit Court with two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, two counts of third-degree CSC, MCL 750.520d, and one count of fourth-degree CSC, MCL 750.520e, based on allegations that he engaged in sexual penetration and conduct with the 14-year-old complainant, DM. DM testified that while her mother was hospitalized from December 31, 2013 through January 5, 2014, and thus was absent from the home, defendant, who had been in a relationship with DM's mother at the time, engaged in sexual penetration and conduct with DM. DM also described another incident wherein the same actions occurred at defendant's home while her mother was sleeping in another room. DM became pregnant. The prosecutor entered DM's medical records into evidence; the records showed that DM had a positive pregnancy test on October 16, 2014, and an abortion on November 17, 2014. DM's mother testified that DM initially refused to tell her mother with whom she had sexual contact, but in April 2015, shortly after DM's mother and defendant ended their relationship, DM informed her mother that defendant had impregnated her. On the basis of this testimony, defendant was bound over to the circuit court. The prosecutor subsequently filed a pretrial motion to admit evidence of (1) DM's pregnancy, (2) DM's abortion, and (3) DM's lack of other sexual partners through November 2014. The court, Shannon N. Walker, J., granted the motion only as to evidence that DM became pregnant and ruled that the other evidence constituted character evidence inadmissible under MRE 404(a)(3). The prosecutor filed an interlocutory appeal, arguing that the entirety of the evidence was admissible under both MRE 404(a)(3) and the rape-shield statute, MCL 750.520j(1). Defendant cross-appealed, seeking a determination that MRE 404(a)(3) and the rape-shield statute excluded the entirety of the evidence. On interlocutory appeal, the Court of Appeals, RIORDAN, P.J., and METER and FORT HOOD, JJ., held that evidence of the complainant's lack of other sexual partners was not subject to the rape-shield statute and was otherwise admissible under the Michigan Rules of Evidence and that evidence of the complainant's pregnancy and abortion fell under the purview of the rape-shield statute but was admissible pursuant to the statute's exception for evidence of the victim's past sexual conduct with the actor. 319 Mich App 153 (2017). Defendant sought leave to appeal in the Supreme Court, and the Supreme Court granted leave to consider (1) whether evidence related to the complainant's pregnancy, abortion, and lack of other sexual partners was within the scope of the rape-shield statute, MCL 750.520j(1); (2) if so, whether the evidence was nonetheless admissible under one of the exceptions set forth in MCL

750.520j(1); and (3) if not, whether the evidence was admissible under general rules governing the admissibility of evidence, such as MRE 402 and MRE 403. 501 Mich 899 (2017).

In an opinion by Justice CLEMENT, joined by Justices ZAHRA, MCCORMACK, VIVIANO, and WILDER, the Supreme Court *held*:

The Court of Appeals correctly held that all the evidence is admissible but erred in its reasoning. None of the evidence falls under the scope of the rape-shield statute, but all the evidence is otherwise admissible under the Michigan Rules of Evidence.

1. The rape-shield statute, MCL 750.520j, serves to limit the admissibility of evidence of a complainant's sexual conduct. MCL 750.520j(1) provides that evidence of specific instances of the victim's sexual conduct shall not be admitted under MCL 750.520b through MCL 750.520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value: (a) evidence of the victim's past sexual conduct with the actor; (b) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. Whether evidence falls within the purview of the rape-shield statute concerns whether the evidence amounts to or references specific conduct, not whether the evidence constitutes a consequence of or relates to sexual activity generally. Because the rape-shield statute does not define the term "specific instances," and because the term "specific instances" is not a term of art, it was appropriate to consult a lay dictionary to establish the plain meaning of the term. "Instance" means "a case or occurrence of something" and "specific" means "specified, precise, or particular." Accordingly, a specific instance of the victim's sexual conduct must relate to a particular occurrence of the victim's sexual conduct.

2. Evidence of DM's pregnancy and evidence of her subsequent abortion were not evidence of a specific instance of the victim's sexual conduct. Although this evidence necessarily implied that sexual activity occurred that caused the pregnancy, the pregnancy and abortion were not evidence regarding a specific instance of sexual conduct; the evidence demonstrated only that at least one act of sexual intercourse occurred in 2014. The conclusion that pregnancy and abortion were not themselves specific instances of the victim's sexual conduct was bolstered by a reading of MCL 750.520j as a whole. MCL 750.520j(1)(b) excepts relevant evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. In so phrasing the statute, the Legislature has distinguished between the specific instance of sexual activity that shows the origin or the source of the semen, pregnancy, or disease—i.e., whatever sexual act led to these consequences—and the semen, pregnancy, or disease itself. Accordingly, the Legislature has *ipso facto* made clear that semen, pregnancy, or disease, while perhaps related to sex, are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j. And because pregnancy, and by extension abortion, is not a specific instance of sexual conduct, neither pregnancy nor abortion falls within the rape-shield statute. Accordingly, the Court of Appeals erred by determining that evidence of DM's pregnancy and abortion fell under the purview of the rape-shield statute.

3. Evidence that DM did not engage in other sexual intercourse in 2014 did not fall within the plain language of the rape-shield statute. This evidence demonstrated an absence of conduct, not a "specific instance" of sexual conduct, and excluding evidence of a lack of sexual

partners under the rape-shield statute would render the phrase "specific instances" meaningless. Accordingly, the Court of Appeals properly determined that DM's lack of other sexual partners did not fall within the scope of the rape-shield statute.

4. MRE 402 provides that relevant evidence is generally admissible. In this case, evidence of DM's pregnancy, abortion, and lack of other sexual partners made it more probable that defendant sexually assaulted DM, and evidence showing that DM, a 14-year-old child, became pregnant was highly probative of the allegation that DM was sexually assaulted. The evidence of DM's abortion corroborated that DM was impregnated and explained the lack of DNA evidence to identify the man who impregnated DM. Further, defendant's offering to pay for half of the cost of the abortion could have demonstrated defendant's consciousness of guilt or desire to destroy evidence. Finally, evidence demonstrating that DM had no sexual partners other than defendant through November 2014 was, by simple process of elimination, probative of the identity of the person who impregnated DM. Accordingly, the offered evidence was relevant under MRE 402.

5. MRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In this case, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The evidence of DM's pregnancy and abortion definitively demonstrated that sexual penetration occurred. If the jury finds credible DM's testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted DM. Accordingly, this evidence was highly probative, and the danger of unfair prejudice created by the evidence did not substantially outweigh this high probative value. Abortion evidence, while perhaps incendiary to some, is not so inherently prejudicial as to render it inadmissible. Although there may be some danger of juror sympathy for a young woman who has gone through pregnancy and abortion or, alternatively, a danger of juror revulsion for a young woman choosing abortion, the evidence here was both highly probative and concise. And to the extent that the abortion evidence could be viewed as cumulative of the evidence of DM's pregnancy, it also served the purpose of explaining why the prosecutor is unable to offer DNA evidence to prove the identity of the man who impregnated DM. If the abortion evidence were not admitted, the jury might be left to speculate as to why DNA evidence is unavailable and whether the pregnancy came to term. As for the lack of sexual partners, the prosecution concisely alleged a valid purpose: the lack of sexual partners eliminates the possibility that someone other than defendant impregnated DM. Moreover, at the time of trial, the trial court has the ability to provide a limiting instruction to the jury concerning the use of this evidence. Accordingly, given the high probative value of the evidence of DM's pregnancy, abortion, and lack of other sexual partners through November 2014, and its low danger of unfair prejudice, the evidence was admissible under MRE 402 and MRE 403.

Affirmed for the reasons stated in the opinion; case remanded to the trial court for further proceedings.

Chief Justice MARKMAN, concurring, agreed with the majority's conclusion that evidence of the complainant's pregnancy, abortion, and lack of other sexual partners was not subject to the rape-shield statute and was admissible under the Michigan Rules of Evidence, but he reached the conclusion that evidence of the complainant's pregnancy and evidence of the abortion were not

subject to the rape-shield statute for different reasons than the majority. Chief Justice MARKMAN would have focused on the language "victim's sexual conduct" as opposed to the majority's focus on the language "specific instances" to reach the conclusion that while pregnancy and abortion are evidence of a *specific instance* of sexual conduct, they are not evidence of a specific instance of the *victim's* sexual conduct. In this case, because only one alleged sexual penetration could have been the source of DM's pregnancy, both evidence of DM's pregnancy and evidence of DM's abortion were—contrary to the majority's assertion—evidence of a "specific instance" of sexual conduct. However, such evidence is not evidence of the "*victim's* sexual conduct"; "conduct" refers only to volitional actions and thus does not encompass involuntary acts such as those that stem from being subjected to sexual abuse.

Justice BERNSTEIN, concurring in part and dissenting in part, agreed with the majority's conclusion that evidence of DM's abortion and her lack of other sexual partners was not governed by the rape-shield statute and that evidence of DM's lack of other sexual partners was admissible under the Michigan Rules of Evidence, but he would have held that evidence of DM's pregnancy was governed by the rape-shield statute and that evidence of DM's abortion was barred by MRE 402 and MRE 403. Justice BERNSTEIN agreed with Chief Justice MARKMAN's conclusion that evidence of DM's pregnancy was evidence of a specific instance of the victim's sexual conduct—the particular sexual encounter that resulted in the pregnancy. Accordingly, because the prosecutor charged defendant with one of the counts of first-degree criminal sexual conduct based on an allegation that a specific instance of sexual penetration resulted in DM becoming pregnant, DM's pregnancy was being presented as evidence of a specific instance of the victim's sexual conduct and evidence of that pregnancy thus fell within the rape-shield statute. Of the two counts of first-degree criminal sexual conduct that defendant was charged with, the majority conceded that one could not have been the source of DM's pregnancy, given the timing. The timing of the remaining count of first-degree criminal sexual conduct had yet to be firmly established. Because the plain language of MCL 750.520j(1)(a) notes that only evidence of the victim's past sexual conduct with the actor is potentially admissible, Justice BERNSTEIN would have held that the rape-shield statute required the prosecutor to make a threshold showing in the trial court about the timing of the alleged sexual penetration in order to establish that DM's pregnancy was linked to past sexual conduct with defendant. As for evidence of DM's abortion, Justice BERNSTEIN would have held that MRE 402 and MRE 403 barred admission of the evidence. The majority focused on the potential prejudice that might fall on DM; however, given that it was defendant who argued against admission of the evidence of DM's abortion, the focus should have been on the effect of this evidence on defendant, and when viewed in this light, the danger of unfair prejudice to defendant substantially outweighed the probative value of the evidence.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 10, 2018

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                   Nos. 155747-155748

LOVELL CHARLES SHARPE,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CLEMENT, J.

At issue in this case is whether the rape-shield statute, MCL 750.520j, precludes the prosecutor from admitting evidence of a complainant's pregnancy, abortion, and lack of other sexual partners during a criminal-sexual-conduct prosecution. On interlocutory appeal, the Court of Appeals held that evidence of the complainant's lack of other sexual partners was not subject to the rape-shield statute and was otherwise admissible under the Michigan Rules of Evidence. As to evidence of the complainant's pregnancy and

abortion, the Court held that this evidence fell under the purview of the rape-shield statute but was admissible pursuant to the statute's exception for evidence of the victim's past sexual conduct with the actor.

We agree that the entirety of the evidence offered is admissible but hold that none of the evidence falls within the scope of the rape-shield statute. Further, we hold that the entirety of the evidence is otherwise admissible under the Michigan Rules of Evidence. Therefore, we reject the reasoning of the Court of Appeals but affirm its disposition that the offered evidence is admissible.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, two counts of third-degree CSC, MCL 750.520d,[1] and one count of fourth-degree CSC, MCL 750.520e, based on allegations that he engaged in sexual penetration and conduct with the 14-year-old complainant, DM. Defendant was in a relationship with DM's mother through early 2015, and he fathered DM's two half-siblings. Defendant did not reside with DM's mother and the three children during his relationship with DM's mother. According to DM's mother's preliminary-examination testimony, DM's mother was hospitalized from December 31, 2013 through January 5, 2014.[2] During this time, defendant stayed at DM's mother's apartment to care for the

---

[1] The third-degree CSC charges were in the alternative to the first-degree CSC charges.

[2] DM's mother testified at the preliminary examination that she was hospitalized from December 31, 2013 to January 5, 2014. On cross-examination, she answered in the affirmative when defense counsel asked whether she was hospitalized from December 2014 to January 2015. Because this alleged sexual encounter could not have been the

2

children.  DM testified that while her mother was absent from the home, defendant "touched" DM "[e]verywhere."  She elaborated that he touched her breasts with his mouth and penetrated her vagina with his penis.  Upon further questioning, she answered that this was not the first or the only time she had sexual contact with defendant.  She described another incident wherein the same actions occurred at defendant's home while her mother was sleeping in another room.

DM became pregnant.  The prosecutor entered DM's medical records into evidence, and the records showed that DM had a positive pregnancy test at Henry Ford Hospital on October 16, 2014, and an abortion at Planned Parenthood on November 17, 2014.  DM's mother testified that DM initially refused to tell her mother with whom she had sexual contact.  Eventually, in April 2015 and shortly after DM's mother and defendant ended their relationship, DM informed her mother that defendant had impregnated her.  On the basis of this testimony, defendant was bound over to the circuit court.

The prosecutor subsequently filed a pretrial motion to admit evidence of (1) DM's pregnancy, (2) DM's abortion, and (3) DM's lack of other sexual partners through November 2014.  The trial court granted the motion only as to evidence that DM became pregnant and ruled that the other evidence constituted character evidence inadmissible under MRE 404(a)(3).[3]

---

source of DM's pregnancy regardless of which date range was accurate, this discrepancy is not material to the present appeal.

[3] MRE 404 provides, in relevant part:

The prosecutor filed an interlocutory appeal, arguing that the entirety of the evidence was admissible under both MRE 404(a)(3) and the rape-shield statute, MCL 750.520j(1), which generally excludes "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct . . . ." Defendant responded and also cross-appealed the trial court's determination that evidence of DM's pregnancy was admissible, seeking a determination that MRE 404(a)(3) and the rape-shield statute excluded the entirety of the evidence.

In a published opinion, the Court of Appeals determined that all the evidence was admissible. *People v Sharpe*, 319 Mich App 153, 173; 899 NW2d 787 (2017). As to the pregnancy and abortion evidence, the Court of Appeals held that MRE 404(a)(3) did not apply because MRE 404(a)(3) concerns the admissibility of character evidence and, here, the prosecutor was not seeking to introduce evidence of the pregnancy and abortion in order to demonstrate that DM acted in conformity with that character. *Id*. at 164-165, 171. The Court then concluded that while evidence of DM's pregnancy and abortion was

---

(a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

\* \* \*

(3) *Character of alleged victim of sexual conduct crime.* In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[.]

4

evidence of a specific instance of DM's sexual conduct that would typically be barred by the rape-shield statute, the evidence was admissible under the rape-shield statute's exception for evidence of the victim's past sexual conduct with the actor. *Id*. at 165, 171. The Court further held that the evidence satisfied the remaining requirements of the rape-shield statute because the evidence was material to a fact at issue—whether sexual penetration occurred—and because the probative value of the evidence outweighed its prejudicial nature. *Id*. at 166, 172-173. Unlike the trial court, the Court of Appeals did not view the abortion evidence to be so prejudicial that it outweighed its probative value. *Id*. at 172-173.

As to the evidence concerning DM's lack of other sexual partners, the Court of Appeals again concluded that the evidence did not fall under MRE 404(a)(3) because it was not introduced to demonstrate that DM acted in conformity with her lack of sexual partners. *Id*. at 168. It further held that the evidence was not barred under the rape-shield statute because the statute excludes specific instances of sexual conduct, not the lack of specific instances of sexual conduct. *Id*. However, it noted that even if the lack of sexual conduct could be construed as specific instances of sexual conduct, the evidence would be admissible under the rape-shield statute's exception for evidence showing the origin of pregnancy. *Id*. at 169. The Court then held that the evidence was otherwise admissible under MRE 402 and MRE 403 because the evidence was relevant to and probative of whether intercourse occurred between DM and defendant and because the evidence was minimally prejudicial. *Id*. at 169-170. Consistently with this ruling, the Court reversed in part and affirmed in part the trial court's ruling and remanded the case to the trial court for further proceedings. *Id*. at 174.

5

Defendant sought leave to appeal in this Court. We granted leave to consider the following issues: (1) whether evidence related to the complainant's pregnancy, abortion, and lack of other sexual partners was within the scope of the rape-shield statute, MCL 750.520j(1); (2) if so, whether the evidence was nonetheless admissible under one of the exceptions set forth in MCL 750.520j(1); and (3) if not, whether the evidence was admissible under general rules governing the admissibility of evidence, such as MRE 402 and MRE 403.[4]

## II. LEGAL BACKGROUND

### A. STANDARD OF REVIEW

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). To the extent that the trial court's evidentiary decision involves underlying questions of law, such as whether a statute precludes admissibility of evidence, this Court reviews those questions of law de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

### B. STATUTORY BACKGROUND OF THE RAPE-SHIELD STATUTE

Until the late twentieth century, Michigan courts considered evidence of a woman's sexual history legally relevant in rape prosecutions. *People v LaLone*, 432 Mich 103, 123-124; 437 NW2d 611 (1989) (ARCHER, J., concurring in part and

---

[4] *People v Sharpe*, 501 Mich 899 (2017).

dissenting in part). Allegations of rape were perceived as easily fabricated, and, accordingly, a woman's chastity—or lack thereof—was believed to be probative of whether she consented to the sexual act at issue. *Id.*; *id.* at 124 n 14.[5] Unsurprisingly, this discouraged women from seeking prosecution of their assailants because they " 'fear[ed] that the trial proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on aspects of an inquisition in which [the] complainant would be required to acknowledge and justify her sexual past.' " *People v Arenda*, 416 Mich 1, 9; 330 NW2d 814 (1982), quoting *People v Khan*, 80 Mich App 605, 613; 264 NW2d 360 (1978).

In 1974, after facing significant criticism of the state's rape laws, the Michigan Legislature passed several reforms that redefined unlawful sexual conduct and created new evidentiary standards for these prosecutions. *LaLone*, 432 Mich at 124-125 (ARCHER, J., concurring in part and dissenting in part). Among these reforms was the rape-shield statute, MCL 750.520j. *Id.* MCL 750.520j serves to limit the admissibility of evidence of a complainant's sexual conduct and provides as follows:[6]

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of

---

[5] However, in cases involving statutory rape, Michigan courts generally deemed such evidence irrelevant to the charge. See, e.g., *People v Russell*, 241 Mich 125, 126-127; 216 NW 441 (1927) ("The general rule is that the chastity or want of chastity of the prosecutrix under the age of consent is unimportant in a statutory rape case, and that testimony on that subject is, therefore, immaterial.").

[6] In addition to the enumerated exceptions within the rape-shield statute, evidence of a complainant's sexual conduct may be admitted to preserve the defendant's constitutional right to confrontation. See *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984).

the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

The rape-shield statute "constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." *People v Morse*, 231 Mich App 424, 429-430; 586 NW2d 555 (1998). The statute also reflects a belief that "inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." *Arenda*, 416 Mich at 10. Finally, the statute protects the privacy of the alleged victim and, in so doing, removes an institutional discouragement from seeking prosecution. *Id*. at 10-11; *LaLone*, 432 Mich at 123-124 (ARCHER, J., concurring in part and dissenting in part). See also *Michigan v Lucas*, 500 US 145, 149-150; 111 S Ct 1743; 114 L Ed 2d 205 (1991) ("The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.").

III. ANALYSIS

In the present case, the prosecutor sought admission of evidence of DM's pregnancy and abortion and DM's lack of other sexual partners through November 2014. There are two different alleged procedural bars to the admission of the evidence proffered by the prosecutor: the rape-shield statute and the Michigan Rules of Evidence. We consider them each in turn.

## A. APPLICABILITY OF THE RAPE-SHIELD STATUTE

When interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004). In so doing, we assign each word and phrase its plain and ordinary meaning within the context of the statute. *People v Kowalski*, 489 Mich 488, 498; 803 NW2d 200 (2011); MCL 8.3a. We must also avoid any construction that would render any part of a statute surplusage or nugatory, if possible. *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017).

The rape-shield statute generally prohibits the admission of "[(1)] [e]vidence of specific instances of the victim's sexual conduct, [(2)] opinion evidence of the victim's sexual conduct, and [(3)] reputation evidence of the victim's sexual conduct . . . ." MCL 750.520j(1). Although the statute was enacted in response to the practice of impeaching the complainant's testimony with evidence of the complainant's sexual conduct, the plain language of the statute does not limit the exclusion of such evidence upon whether the

evidence is offered by the prosecutor or by the defendant.[7] The statute's latter two categories of exclusion are not relevant here because the evidence offered by the prosecutor in this case does not constitute opinion or reputation evidence. Specifically, the proffered evidence consists of medical records of DM's pregnancy and abortion, DM's mother's testimony that DM became pregnant and obtained an abortion, and DM's testimony that she had no other sexual partners through November 2014. The prosecutor has not sought to offer witness testimony commenting on DM's sexual reputation or any witness's opinion of DM's sexual conduct.

Remaining at issue is whether the offered evidence constitutes "[e]vidence of specific instances of the victim's sexual conduct." MCL 750.520j(1).[8] Because the rape-shield statute fails to define the term "specific instances," we may refer to a dictionary to help establish its plain meaning. See *Rea*, 500 Mich at 428. As the term "specific instances" is not a term of art, we use a lay dictionary to aid with interpretation. See *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007). *Random House Webster's College Dictionary* (2001) defines "instance" as "a case or occurrence of something" and defines "specific" as "specified, precise, or particular." Accordingly, a specific instance of the victim's sexual conduct must relate to a particular occurrence of the victim's sexual conduct.

---

[7] However, MCL 750.520j(2) only requires a written motion and offer of proof if such evidence is offered by the defendant. Accordingly, even if this evidence was subject to the rape-shield statute, the prosecutor was not required to move for its admission.

[8] We do not adopt Chief Justice MARKMAN's definition of the term "conduct" as expressed in his concurring opinion for the reasons noted by Justice YOUNG in *People v Parks*, 483 Mich 1040 (2009) (YOUNG, J., concurring).

Evidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct. Although this evidence necessarily implies that sexual activity occurred that caused the pregnancy, the pregnancy and abortion are not evidence regarding a specific instance of sexual conduct. As we have previously stated, whether evidence falls within the purview of the rape-shield statute concerns whether the evidence "*amount*[s] to or *reference*[s] specific conduct," *People v Ivers*, 459 Mich 320, 329; 587 NW2d 10 (1998), not whether the evidence constitutes a consequence of or relates to sexual activity generally. In this case, the pregnancy and abortion evidence alone does not describe a particular or specific sexual encounter. The evidence demonstrates only that at least one act of sexual intercourse occurred in 2014 and does not describe one particular occurrence of sexual conduct. Because DM's pregnancy and abortion are not evidence of a particular occurrence of sexual conduct, evidence thereof does not fall under the purview of the rape-shield statute, and the Court of Appeals erred in determining otherwise. See *Kowalski*, 489 Mich at 498.

The conclusion that pregnancy and abortion are not themselves specific instances of the victim's sexual conduct is bolstered by a reading of MCL 750.520j as a whole. "[W]ords and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole," and "a word or phrase should be given meaning by its context or setting." *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014) (quotation marks and citation omitted; alteration in original). MCL 750.520j(1) explains that specific instances of the victim's sexual conduct shall not be admitted, but MCL 750.520j(1)(b) excepts relevant "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or

disease." These specific instances of sexual conduct may be used to "show," or "cause or permit to be seen," *Merriam-Webster's Collegiate Dictionary* (11th ed), the "origin of semen, pregnancy, or disease." In so phrasing the statute, the Legislature has distinguished between the specific instance of sexual activity that shows the *origin* or the *source* of the semen, pregnancy, or disease—i.e., whatever sexual act led to these consequences—and the semen, pregnancy, or disease itself. Accordingly, the Legislature has *ipso facto* made clear that semen, pregnancy, or disease, while perhaps related to sex, are not themselves the specific instances of sexual conduct envisioned by MCL 750.520j. And because pregnancy, and by extension abortion, is not a specific instance of sexual conduct, neither pregnancy nor abortion falls within the rape-shield statute.

Similarly, evidence that DM did not engage in other sexual intercourse in 2014 does not fall within the plain language of the rape-shield statute. This evidence demonstrates an absence of conduct, not a "specific instance" of sexual conduct.[9] Excluding evidence of a lack of sexual partners under the rape-shield statute would render the phrase "specific instances" meaningless. See *Rea*, 500 Mich at 428. We must give effect to all words in the statute, and, accordingly, the Court of Appeals properly determined that DM's lack of other sexual partners does not fall within the scope of the rape-shield statute.

---

[9] To the extent that defendant cites caselaw from Minnesota and Wisconsin wherein courts held that evidence demonstrating a lack of sexual conduct was prohibited under the rape-shield statutes in those states, we note that Minnesota's and Wisconsin's statutes do not contain the phrase "specific instances" and, accordingly, we find this caselaw unpersuasive. See Minn Stat § 609.347(3) (referring to "evidence of the victim's previous sexual conduct" generally); Wis Stat § 972.11(2)(b) (using the phrase "*any evidence* concerning the complaining witness's prior sexual conduct") (emphasis added).

Finally, we note that this conclusion is consistent with the purposes of the rape-shield statute. The rape-shield statute was designed to prevent unwelcome and unnecessary inquiry into a complainant's sexual activities, thereby protecting the complainant's privacy and protecting the complainant from suffering unfair prejudice based on her sexual history. See *Arenda*, 416 Mich at 10. But here, the complainant has voluntarily offered evidence of her pregnancy, abortion, and lack of sexual history to bolster her allegations of criminal sexual conduct against defendant. There is no indication from our Legislature or in our caselaw that the rape-shield statute was designed to prevent a complainant's disclosure of her own sexual history or its attendant consequences.[10] Accordingly, giving effect to the plain language of the statute and to the Legislature's intent in enacting the rape-shield statute, we hold that the entirety of the evidence offered here is not subject to the rape-shield statute. See *Gardner*, 482 Mich at 50.

## B. APPLICATION OF MRE 402 AND MRE 403

Because the offered evidence is not excluded under the rape-shield statute, we now analyze whether the evidence is otherwise admissible under the Michigan Rules of Evidence. Generally, relevant evidence is admissible. MRE 402; *People v Roper*, 286

---

[10] Although we conclude that the evidence offered is not rendered inadmissible by the rape-shield statute, we offer a note of caution to prosecutors who seek to introduce this type of evidence. As we have stated before, the admission of evidence typically barred by the rape-shield statute "may be required to preserve a defendant's constitutional right to confrontation." *Hackett*, 421 Mich at 348. The admission of this type of evidence may open the door to the introduction of evidence whose admission may otherwise have been precluded by the rape-shield statute.

Mich App 77, 91; 777 NW2d 483 (2009). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. *Blackston*, 481 Mich at 462.[11]

The offered evidence is relevant under MRE 402. Evidence of DM's pregnancy, abortion, and lack of other sexual partners makes it more probable that defendant sexually assaulted DM. Evidence showing that DM, a 14-year-old child, became pregnant is highly probative of the allegation that DM was sexually assaulted. See *People v Borowski*, 330 Mich 120, 126; 47 NW2d 42 (1951). It also provides context for

---

[11] We note that the trial court's MRE 402 and MRE 403 analysis did not sufficiently address the basis of its decision to exclude the evidence of abortion and the lack of sexual partners. Cf. *People v Johnigan*, 265 Mich App 463, 469-470; 696 NW2d 724 (2005) (opinion by SAWYER, J.); *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). To the extent that the trial court based its ruling excluding evidence of the lack of sexual partners and the abortion on MRE 404(a)(3), that was an abuse of discretion. MRE 404(a) only excludes character evidence used to prove conformity to a character trait. The prosecutor, however, articulated valid, nonpropensity explanations for the evidence of lack of sexual partners and the abortion.

14

DM's disclosure of the sexual assault: DM did not originally disclose the sexual assault but only did so after she discovered that she was pregnant and after repeated questioning by her mother regarding the identity of who impregnated DM. The evidence of DM's abortion corroborates that DM was impregnated and explains the lack of DNA evidence to identify the man who impregnated DM. Further, defendant's offering to pay for half of the cost of the abortion may demonstrate defendant's consciousness of guilt or desire to destroy evidence. To the extent that defendant presents alternative theories for why he paid for half of DM's abortion, we note that the standard for probative force is minimal, *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998), and that defendant may present any one of the reasonable alternative reasons for payment to the jury, who will then weigh this evidence. And finally, evidence demonstrating that DM had no sexual partners other than defendant through November 2014 is, by simple process of elimination, probative of the identity of the person who impregnated DM.

The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, and therefore, the evidence is not excluded under MRE 403. The evidence of DM's pregnancy and abortion definitively demonstrates that sexual penetration occurred. If the jury finds credible DM's testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted DM. Accordingly, this evidence is highly probative.

The danger of unfair prejudice created by the evidence does not substantially outweigh this high probative value. All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate

15

weight by the jury or involve extraneous considerations. See *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). We agree with the Court of Appeals that abortion evidence, while perhaps incendiary to some, is not so inherently prejudicial in today's society as to render it inadmissible. See *State v Stanton*, 319 NC 180, 186; 353 SE2d 385 (1987) ("The mere fact that an abortion took place is not so inflammatory as to render it inadmissible."). Although there may be some danger of juror sympathy for a young woman who has gone through pregnancy and abortion or, alternatively, a danger of juror revulsion for a young woman choosing abortion, the evidence here is both highly probative and concise. And to the extent that the abortion evidence could be viewed as cumulative of the evidence of DM's pregnancy, it also serves the purpose of explaining why the prosecutor is unable to offer DNA evidence to prove the identity of the man who impregnated DM. If the abortion evidence were not admitted, the jury might be left to speculate as to why DNA is unavailable and whether the pregnancy came to term.

As for the lack of sexual partners, Michigan courts have generally taken a dim view on this evidence. See *People v Stull*, 127 Mich App 14, 18; 338 NW2d 403 (1983); *People v Bone*, 230 Mich App 699, 702; 584 NW2d 760 (1998); *People v Khan*, 80 Mich App 605, 621; 264 NW2d 360 (1978). But those cases involved efforts to use a victim's lack of sexual history to support arguments about the victim's credibility or, alternatively, about consent. In this case, the prosecution has concisely alleged a valid purpose: the lack of sexual partners eliminates the possibility that someone other than defendant impregnated DM. Moreover, at the time of trial, the trial court has the ability to provide a limiting instruction to the jury concerning the use of this evidence.

16

Given the high probative value of the evidence of DM's pregnancy, abortion, and lack of other sexual partners through November 2014, and its low danger of unfair prejudice, the evidence is admissible under MRE 402 and MRE 403.

## IV. CONCLUSION

We hold that evidence of DM's pregnancy, abortion, and lack of other sexual partners through November 2014 does not fall under the rape-shield statute. Further, this evidence is otherwise admissible under MRE 402 and MRE 403. We therefore affirm the result reached by the Court of Appeals—allowing the admission of this evidence—but we do so for the reasons stated in this opinion, and we remand this case to the trial court for further proceedings consistent with this opinion.

Elizabeth T. Clement
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Kurtis T. Wilder

17

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                    Nos. 155747-155748

LOVELL CHARLES SHARPE,

       Defendant-Appellant.

_____

MARKMAN, C.J. (*concurring*).

I agree with the majority that evidence of the complainant's pregnancy, abortion, and lack of other sexual partners is not subject to the rape-shield statute, MCL 750.520j, and is admissible under the Michigan Rules of Evidence. However, I reach the conclusion that evidence of the complainant's pregnancy and evidence of the abortion are not subject to the rape-shield statute for different reasons than the majority. In all other respects, I agree with the majority's conclusions and its reasoning.

The rape-shield statute, MCL 750.520j, provides, in pertinent part:

> (1) Evidence of specific instances of the *victim's sexual conduct*, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.[1]

_____

[1] " '[P]ast' sexual conduct refers to conduct that has occurred before the evidence is

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.  [Emphasis added.]

The majority holds that "[e]vidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct" because "[a]lthough this evidence necessarily implies that sexual activity occurred that caused the pregnancy, the pregnancy and abortion are not evidence regarding a specific instance of sexual conduct."  Although I agree with the majority's conclusion that "[e]vidence of DM's pregnancy and her subsequent abortion are not evidence of a specific instance of the victim's sexual conduct," I reach this conclusion for different reasons.  While the majority focuses on the language "specific instances" to reach this conclusion, I would focus on the language "victim's sexual conduct."  In other words, I believe that while the pregnancy and abortion are, in fact, evidence of a *specific instance* of sexual conduct, they are not evidence of a specific instance of the *victim's* sexual conduct.

As the majority recognizes, there were two allegations of sexual penetration, but one of these "alleged sexual encounter[s] could not have been the source of DM's pregnancy" due to its timing.  That leaves one alleged sexual penetration that still could have been the source of DM's pregnancy.  Therefore, contrary to the majority's assertion, both evidence of DM's pregnancy and evidence of DM's abortion are evidence of a "specific instance" of sexual conduct.  Indeed, if the majority were correct that the pregnancy and abortion are not such evidence, I do not see how the majority can later conclude, as it does, that this evidence is relevant-- much less "highly probative"--

---

offered at trial." *People v Adair*, 452 Mich 473, 483; 550 NW2d 505 (1996).

2

evidence.[2]  The pregnancy and the abortion are either evidence of the one alleged penetration that *could* have resulted in DM's pregnancy, or they are not.  If they are, then the pregnancy and abortion are evidence of a specific instance of sexual conduct, but, if they are not, then the pregnancy and abortion are not even relevant-- let alone "highly probative"-- evidence.  For these reasons, as well as for those set forth in Part III(B) of the majority's opinion, I conclude that the pregnancy and abortion are evidence of a specific instance of sexual conduct.[3]

---

[2] In Part III(B) of its opinion, the majority correctly concludes that the proffered evidence is relevant under MRE 402 and that its probative value is not substantially outweighed by the danger of unfair prejudice under MRE 403.  As it explains, "[e]vidence of DM's pregnancy, abortion, and lack of other sexual partners makes it more probable that defendant sexually assaulted DM."  Indeed, as the majority further explains, this evidence is "highly probative" because the "evidence of DM's pregnancy and abortion definitively demonstrates that sexual penetration occurred" and "[i]f the jury finds credible DM's testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted DM."  In light of these conclusions, how can the majority conclude at the same time that this evidence is not evidence of a "specific instance" of sexual conduct?

[3] While I agree with the majority that "pregnancy and abortion are not themselves specific instances of the victim's sexual conduct" (or *anyone's* sexual conduct for that matter), what the majority fails to recognize is that the rape-shield statute applies not just to specific instances of sexual conduct themselves, but more broadly to "[e]*vidence of* specific instances of the victim's sexual conduct," MCL 750.520j(1), and, as the majority does recognize (at least later in its opinion), DM's pregnancy and abortion are indeed evidence of a specific instance of sexual conduct, i.e., the evidence of her pregnancy and abortion "makes it more probable that defendant sexually assaulted DM."  And the fact that the rape-shield statute contains an exception for "[e]vidence of specific instances of sexual activity showing the source or origin of . . . pregnancy," MCL 750.520j(1)(b), demonstrates that the rape-shield statute generally applies to evidence of a pregnancy because, if it did not as the majority alleges, there would be no need to include an exception for evidence of pregnancy.

However, as mentioned earlier, I believe that such evidence is not evidence of the "victim's sexual conduct." As I stated in my dissenting statements in *People v Piscopo*, 480 Mich 966 (2007),[4] and *People v Parks*, 483 Mich 1040 (2009),[5] "conduct" refers only to "volitional actions" and thus "does not encompass *involuntary* acts such as those that stem from being subjected to sexual abuse." *Parks*, 483 Mich at 1060 (MARKMAN, J., dissenting).[6]

As I stated in *Parks*, 483 Mich at 1059-1062 (MARKMAN, J., dissenting):

> This statute only excludes evidence of the "victim's sexual conduct." Thus, any inquiry into the statute's application must focus on the meaning of "conduct." The ordinary meaning of "conduct" is harmonious with the Legislature's use of "conduct" throughout the enacting legislation, 1974 PA 266, and with the Legislature's purposes in enacting the rape-shield statute.

---

[4] In *Piscopo*, the Court denied leave to appeal and I, joined by Justice CAVANAGH, dissented. In that case, the defendant (a pastor) sought to admit evidence that the complainant had made prior false allegations of sexual abuse against another pastor and that the complainant also claimed to have been raped by a demon. I would have reversed the trial court's decision that barred the admission of this evidence.

[5] In *Parks*, this Court denied leave to appeal. Justice YOUNG wrote a concurring statement, Chief Justice KELLY wrote a dissenting statement (focused exclusively on the Confrontation Clause), and I wrote a dissent that Justice CAVANAGH again joined. In that case, the defendant sought to introduce evidence that prior to her allegations against the defendant, the complainant had alleged that her step-grandfather sexually abused her. This was relevant because during the trial the complainant described sexual acts that a child of her age typically would not have knowledge of or be able to describe and the medical doctor who examined the complainant after her allegations against her step-grandfather and after her allegations against the defendant testified that the complainant's history led him to believe that she had been abused. I would have reversed the trial court's decision that barred the admission of the evidence of the complainant's past sexual abuse.

[6] See also *People v Duenaz*, 498 Mich 969, 969 (2016) ("[W]e encourage the Legislature to clarify whether evidence of prior sexual abuse constitutes 'sexual conduct' within the meaning of the rape-shield statute, MCL 750.520j.").

4

Each of these interpretative guides strongly suggests that "conduct" refers only to *volitional* actions by the victim and does not encompass *involuntary* acts such as those that stem from being subjected to sexual abuse.

The definition of "conduct" varies little from dictionary to dictionary. Conduct is defined as: "personal behavior; way of acting; deportment," *Random House Webster's College Dictionary* (1997); "[t]he way a person acts; behavior," *The American Heritage Dictionary of the English Language* (1981); and "[t]he manner of guiding or carrying one's self; personal deportment; mode of action; behavior," *Webster's Revised Unabridged Dictionary* (1996). The common theme of these definitions is that "conduct" pertains to an individual's own behavior, to actions initiated or set in motion *by* the individual. Being the *victim* of, or having been *subjected* to, sexual abuse by *another* does not by this definition of "conduct" constitute something within the scope of the rape-shield statute, and therefore should not be excluded from evidence under the authority of this statute.[7]

This interpretation of "conduct" is further supported by the Legislature's use of "conduct" throughout the rape-shield statute. If "conduct" is read to include abuse perpetrated *against* the victim by *other* persons, then references in the statute, MCL 750.520j(1), to "opinion evidence of the victim's sexual conduct" and "reputation evidence of the victim's sexual conduct" make no sense. Reputation and opinion evidence are typically based on a person's character, such as the person's tendency for aggression. A person's character and conduct are similar at least in the sense that they are each formed by voluntary decisions made by that individual. Actions concerning which an individual has no control cannot be said to establish a person's character, so when the Legislature extended protection from reputation and opinion evidence in MCL 750.520j(1), it likely understood that such evidence could only apply with respect to a victim's sexual history over which the victim has control. Thus, the ordinary volitional understanding of "conduct" also fits within the context in which it is used in the rape-shield statute, whereas a broader definition,

---

[7] For example, one would not ordinarily describe a rape victim as having "engaged in" or "taken part in" sexual conduct. And it would be equally odd for a speaker of American English to assert, for example, that a rape victim "reflected upon the trauma she had incurred as the result of her sexual conduct" or that the victim "testified at trial as to her own sexual conduct suffered at the hands of the defendant."

encompassing non-volitional behavior, including sexual abuse by others, does not.

The statute provides additional insight on the meaning of "conduct" by distinguishing "conduct" from "activity" in paragraphs (a) and (b) of MCL 750.520j(1). These paragraphs set forth two exceptions to the general inadmissibility of evidence regarding a "victim's sexual conduct" in subsection (1). Paragraph (a) renders admissible evidence of the "victim's past sexual *conduct* with the actor," and paragraph (b) renders admissible "specific instances of sexual *activity*" concerning the "source or origin of semen, pregnancy, or disease." "Activity" does not connote the concept of volition to the same extent as "conduct." "Activity" in paragraph (b) pertains to conditions that directly result from the physical sex act itself—semen, pregnancy, disease—in which the concept of volition is essentially irrelevant. In contrast, "conduct" in paragraph (a) pertains to a range of interpersonal behavior that extends beyond the physical act itself, and in which the concept of volition may be quite relevant in assessing whether the victim chose to behave in such a way that the defendant should be deemed less culpable, or not culpable at all, for the alleged offense. Interpreting "conduct" to include non-volitional action blurs the Legislature's apparently careful distinction between "conduct" and "activity."

The Legislature's use of "conduct" throughout 1974 PA 266 further supports interpreting "conduct" to include only volitional actions. See, e.g., MCL 750.520b (describing first-degree criminal sexual "conduct"). It seems unlikely that the Legislature intended to punish non-volitional activity under the criminal code.[8] Interpreting "conduct" to mean only

---

[8] Under MCL 750.520b(1)(b), "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [t]hat other person is at least 13 but less than 16 years of age" and one of several enumerated aggravating circumstances exists, such as "[t]he actor is a member of the same household as the victim." As I stated in *Piscopo*, 480 Mich at 970 (MARKMAN, J., dissenting), in regards to MCL 750.520d, which is very similar to MCL 750.520b,

MCL 750.520d states that a person is guilty of "criminal sexual conduct in the third degree" if that person

engages in sexual penetration with another person and if any of the following circumstances exist:

6

volitional action maintains this understanding. "Identical language should receive identical construction when found in the same act."

Further uses of "conduct" in 1974 PA 266 are found in MCL 750.520a, in which the Legislature defined "actor" as "a person accused of criminal sexual conduct," MCL 750.520a(a), and "victim" as "the person alleging to have been subjected to criminal sexual conduct," MCL 750.520a(s). These definitions distinguish a person who has *chosen* to perform a certain act from one who had *no* choice in performing such act. If a victim, for example, is raped by an actor, the rape is considered to be the *actor's* conduct. The victim is considered to have been "*subjected to*" the conduct, strongly suggesting that rape is not fairly characterized as the *victim's* conduct. Rather, it would only be the "conduct" of the person who *chose* to perform the act.

The overall purpose of the rape-shield statute also supports understanding "conduct" by its normal definition to encompass only volitional activity. MCL 750.520j was clearly enacted to prevent the introduction of embarrassing evidence regarding the victim's sexual history at trial. Such prohibition, it was hoped, would increase the likelihood that sexual assault victims would report such assaults and not be deterred from doing so by the prospect of embarrassment. Yet, reading the rape-shield statute to exclude evidence regarding past *abuse* suffered by the victim bears no apparent relationship to this purpose. While any person may well be uncomfortable about revealing past instances in which he or she was sexually abused, such uneasiness is sharply distinct from the kind of embarrassment that rape-shield statutes were designed to foreclose— embarrassment caused as a function of one's *own* misbehavior or questionable conduct. [Citation omitted.]

---

     (a) [t]hat other person is at least 13 years of age and under 16 years of age.

If "conduct" referred to passive or involuntary activity, then a girl who was raped by a 15-year-old boy would *herself* be guilty of third-degree [criminal sexual conduct] under the law. However, such an outcome would obviously be absurd and illogical. Hence, the use of "conduct" throughout the relevant statute suggests strongly that the Legislature must have intended "conduct" to refer to volitional behavior and that the term does not encompass involuntary sexual abuse.

Not only is this the more textually grounded approach to giving meaning to MCL 750.520j, but it is also the approach that best facilitates the production of evidence, which is the "lifeblood of the criminal justice process . . . and indispensable in ensuring fair and just [jury] determinations." *People v Goldston*, 470 Mich 523, 546; 682 NW2d 479 (2004) (MARKMAN, J., concurring).

In the instant case, the proffered evidence relates to defendant's sexual abuse of DM; thus, the rape-shield statute does not apply. More specifically, the prosecutor is seeking to introduce evidence that DM was pregnant, obtained an abortion, and did not have sexual intercourse with anybody other than defendant.[9] This evidence, if believed by the jury, seemingly proves that defendant sexually abused DM. However, evidence of sexual abuse is not tantamount to evidence of the "victim's sexual conduct" and thus is not subject to the rape-shield statute.

Again, I agree with the majority that evidence of DM's pregnancy, abortion, and lack of other sexual partners is not subject to the rape-shield statute and is admissible under the Michigan Rules of Evidence. However, I believe that evidence of DM's pregnancy and evidence of the abortion are not subject to the rape-shield statute for different reasons than the majority. In all other respects, I agree with the majority's conclusions and its reasoning.

Stephen J. Markman

---

[9] DM was 14 years old at the time of the abuse and thus was legally unable to give consent. See *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005); MCL 750.520b; MCL 750.520c; MCL 750.520d; MCL 750.520e.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

Nos. 155747-155748

LOVELL CHARLES SHARPE,

      Defendant-Appellant.

_____

BERNSTEIN, J. (*concurring in part and dissenting in part*).

I respectfully dissent in part from this Court's opinion, which affirms the disposition of the Court of Appeals on other grounds. This case deals with three separate pieces of evidence: (1) the complainant DM's pregnancy; (2) DM's subsequent abortion; and (3) DM's lack of other sexual partners during the relevant time period. The trial court held that only evidence of DM's pregnancy is admissible, but this Court would instead find that all three pieces of evidence are admissible. I agree with the majority that evidence of DM's abortion and her lack of other sexual partners is not governed by the rape-shield statute and that evidence of DM's lack of other sexual partners is admissible under our rules of evidence. However, I would hold that evidence of DM's pregnancy is governed by the rape-shield statute, MCL 750.520j, and that evidence of DM's abortion is barred by MRE 402 and MRE 403.

First, I agree with the Court of Appeals' implicit holding that the trial court abused its discretion in finding that some of the evidence is inadmissible under MRE 404(a)(3), because the prosecutor does not seek to introduce this evidence as character evidence.

Instead, we must then consider whether any of this evidence is admissible under the rape-shield statute.

The first question in considering admissibility under the rape-shield statute is whether the proffered evidence is "[e]vidence of specific instances of the victim's sexual conduct . . . ." MCL 750.520j(1). I agree with the majority that evidence of DM's abortion and DM's lack of other sexual partners does not fall under the rape-shield statute, as that evidence is not evidence of specific instances of the victim's sexual conduct. However, I believe that evidence of DM's pregnancy does fall under the rape-shield statute.

The majority states that "the pregnancy . . . evidence alone does not *describe* a particular or specific sexual encounter. The evidence demonstrates only that at least one act of sexual intercourse occurred in 2014 and does not *describe* one particular occurrence of sexual conduct." (Emphasis added.) The focus on the verb "describe" here is curious, given that it does not appear anywhere in the statute. Rather, the plain language of MCL 750.520j simply requires that the proffered evidence be "evidence" of a *specific instance* of the victim's sexual conduct. For the reasons stated in Chief Justice MARKMAN's concurring opinion, I would find that evidence of DM's pregnancy is evidence of a *specific instance* of the victim's sexual conduct—the particular sexual encounter that resulted in the pregnancy.[1] As Chief Justice MARKMAN points out,

---

[1] Although I believe Chief Justice MARKMAN raises an interesting point concerning the meaning of "sexual conduct" in the rape-shield statute, the prosecutor here specifically argued that "conduct" includes both voluntary and involuntary behavior, and I would thus leave this question for another day.

2

evidence of DM's pregnancy must be presented as evidence of a specific instance of sexual penetration, or else it is irrelevant; if it is *not* evidence of a specific instance of sexual penetration, then how would it add anything to the criminal trial against defendant? In other words, because the prosecutor charged defendant with one of the counts of first-degree criminal sexual conduct based on an allegation that a specific instance of sexual penetration resulted in DM becoming pregnant, I would find that DM's pregnancy is being presented as evidence of a specific instance of the victim's sexual conduct and evidence of that pregnancy thus falls within the rape-shield statute.

Evidence that falls under the rape-shield statute generally shall not be admitted, subject to two exceptions. The second exception, concerning "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease," is clearly inapplicable here, as the mere fact of a pregnancy cannot, by itself, show the *source* of semen or pregnancy, and there is nothing to suggest that a disease is at issue. MCL 750.520j(1)(b).[2]

---

Because I believe that evidence of an abortion is one step more attenuated from a specific instance of sexual conduct than evidence of a pregnancy is, I agree with the majority's conclusion that evidence of an abortion does not fall under the rape-shield statute, despite otherwise agreeing with Chief Justice MARKMAN's reading of the plain language of the statute.

[2] Contrary to the majority's reasoning, I do not believe that reading the exception in MCL 750.520j(1)(b) alongside MCL 750.520j(1) leads to the conclusion that pregnancy is not evidence of a specific instance of sexual conduct. While MCL 750.520j(1)(b) does no work in this context, because evidence of a pregnancy is not evidence of the source of itself, that does not change the fact that it is evidence of a specific instance of sexual conduct.

The first exception, concerning "[e]vidence of the victim's past sexual conduct with the actor," presents a more difficult question. MCL 750.520j(1)(a). Clearly, the prosecutor argues that DM's pregnancy is evidence of DM's past sexual conduct with defendant. However, testimony presented about defendant's alleged sexual abuse appears to conflict with the timing of the pregnancy. There are two alleged instances of sexual penetration, one of which the majority concedes could not have been the source of DM's pregnancy, given the timing. But the timing of the other alleged instance of sexual penetration has not yet been firmly established, and defendant alleges that the timing of both instances does not coincide with the timing of DM's pregnancy. Because the plain language of the first exception notes that only evidence of the victim's past sexual conduct *with the actor* is potentially admissible, I would find that the rape-shield statute requires the prosecutor to support its assertion that DM's pregnancy is linked to past sexual conduct with defendant. Said differently, *before* evidence of DM's pregnancy can be deemed admissible under the first exception to the rape-shield statute, I would hold that the prosecutor needs to make a threshold showing in the trial court that this evidence concerns past sexual conduct *with defendant*. The timing of the second alleged instance of sexual penetration has still not been established, and without an idea of the relevant time frame, it is only through mere speculation that one can connect DM's pregnancy to sexual conduct with defendant. Accordingly, I would instead remand to the trial court to allow the prosecutor to make this preliminary showing before the admissibility of evidence of DM's pregnancy is determined.

Turning next to evidence of DM's subsequent abortion, I would find that it is barred by MRE 402 and MRE 403. As an initial matter, should evidence of DM's

4

pregnancy be excluded, the evidence of the abortion would cease to be relevant to the extent it is needed to explain why no DNA evidence is available.[3] Evidence of DM's abortion would, of course, tend to show that sexual penetration with *someone* had occurred, and would thus be minimally relevant for that purpose. However, in considering the balancing test presented in MRE 403, which states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," the majority focuses solely on the potential prejudice that might fall on DM, not defendant. Given that it is defendant who argues against admission of this evidence because of the potential prejudice to his criminal case, the focus should be on the effect of this evidence on defendant. See *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) ("This unfair prejudice [of MRE 403] refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.") (quotation marks and citation omitted).

Abortion remains a subject of fierce political and *moral* debate in modern society, which is not fully captured by the decades-old caselaw on which the majority opinion relies. Although juror sympathies might split more evenly when considering a minor who chooses an abortion after alleged sexual abuse, I find it hard to believe the same would be true when considering defendant, a grown man accused of sexually abusing a minor. Considered in this light, I believe that evidence of DM's abortion would not be

---

[3] However, given the many ways in which a pregnancy may sadly be terminated without medical intervention, this argument about relevance does not appear to be particularly strong, even if evidence of the pregnancy is admitted.

highly probative, but would subject defendant to unfair prejudice, and I would hold that such evidence should be excluded under MRE 403.

I agree with the majority that evidence of DM's abortion and lack of other sexual partners is not governed by the rape-shield statute and that DM's lack of other sexual partners is admissible under the Michigan Rules of Evidence. However, I continue to believe that evidence of DM's pregnancy is governed by the rape-shield statute, and that the prosecutor must make a threshold showing that the pregnancy is tied to the specific instance of sexual penetration of which defendant is being accused in order for that evidence to be admissible under MCL 750.520j(1)(a). I also believe that evidence of DM's abortion would subject defendant to unfair prejudice, and should therefore be excluded under MRE 403.

Richard H. Bernstein