*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSHUA MATTHEW-ROLLIN HUMPHREY,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 341198
Muskegon Circuit Court
LC No. 16-003952-FC

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

Defendant, Joshua Matthew-Rollin Humphrey, appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct involving an accomplice. MCL 750.520b(1)(d)(*i*). The trial court sentenced defendant outside of the sentencing-guidelines range to prison terms of 28 to 51 years for each conviction. We affirm.

## I. BACKGROUND

Defendant's convictions result from the sexual assaults of KW and SL. The evidence at trial revealed that defendant and his codefendant Larry Stiff drugged the women with prescription medications and raped them in Stiff's basement. Consistent with defendant's convictions, the jury found Stiff guilty of two counts of CSC-1, MCL 750.520b(1)(d), for which the trial court sentenced Stiff to serve prison terms of 24 to 51 years for each conviction. This Court recently affirmed Stiff's convictions and sentences. See *People v Stiff*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2019 (Docket No. 340765).

At trial, KW testified that defendant contacted her online and that she agreed to meet him. After meeting him, defendant offered to take KW to get something to eat, but instead took her to a bar. KW testified that Stiff approached them at the bar; although SL did not meet defendant online, she befriended KW at the bar and began interacting with Stiff and defendant as a result. KW stated that she asked defendant on multiple occasions to bring her back to her car, but defendant insisted that she drink a shot of alcohol before he would do so. Ultimately, defendant ordered shots and brought them back to KW and SL, who drank them. The victims recalled that, before drinking the shots, they had not consumed a sufficient amount of intoxicants

-1-

to become inebriated. Both victims testified, however, that they suffered from nausea, loss of bodily control, and blackouts within a short time after drinking the shots provided by defendant.

The victims each recalled that Stiff and defendant transported them to a location later identified as Stiff's home and took them to the basement. Both women continued to suffer from blackouts and loss of bodily function in the basement. Without the women's consent, and while the women were still suffering from blackouts and unable to resist, defendant and Stiff vaginally and anally penetrated both women. The codefendants left the women on a mattress in the basement and, when KW and SL awoke, they were both missing their phones. After regaining some measure of control, the women left the home, although they reported still feeling sluggish the next day.

KW reported the assault to her mother the morning after it occurred and was examined by a sexual-assault nurse examiner, Robin Atwood, at a hospital; KW's mother reported the assault to the police. Atwood documented contusions or bruises on KW's knees, inner thighs, and ankle as well as injuries to KW's anus and vagina. She took DNA samples from KW's anus and vagina, as well as blood and urine samples. The DNA test returned results consistent with the DNA of both defendant and Stiff and the urine sample tested positive for gabapentin—a prescription muscle relaxant and anticonvulsant—and amitriptyline—an antidepressant. A forensic scientist testified that gabapentin can cause sleeping, faintness, lightheadedness and loss of control over bodily movements and that amitriptyline can cause an irregular heart rate, fainting, dizziness, and sleepiness. Dr. Michelle Glinn, a private forensic toxicologist with a Ph.D. in biochemistry, opined that these drugs could be used to facilitate "date rape," especially when combined with alcohol and that both drugs would be detectable in a victim's samples for 24 hours. Dr. Glinn testified that the drugs are commonly prescribed as pills and would have to be ground to be put into a drink.

Over the codefendant's objection, the prosecution presented other-acts testimony from five other victims. Although there were differences in the various details, the other-acts witnesses offered remarkably similar testimony. Several stated that they agreed to meet defendant through online contact. They each agreed to meet him in person and ended up at a bar. Most of the witnesses stated that Stiff appeared at the same location and interacted with Humphrey. All the women testified that defendant provided them with a drink at some point in the night; after having the drink, each woman suffered black outs, confusion, sickness, loss of bodily control, or similar symptoms within a short time. Most of the victims recalled going to another location, usually Stiff's basement, where they were sexually penetrated. One woman was not sexually assaulted because her friends intervened and brought her to their apartment; defendant and Stiff followed the women to the apartment and attempted to persuade the victim to leave the apartment, but were eventually forced to leave. A majority of the women testified that they or others were missing valuables after the encounter. Each of the sexual-assault victims described feeling confused and violated by the assault, but most indicated that they did not contact the police department afterwards because they were ashamed, confused, or thought no one would believe them.

## II. ANALYSIS

### A. OTHER-ACTS EVIDENCE

On appeal, defendant first argues that the trial court abused its discretion and violated his constitutional rights when it allowed the prosecution to present other-acts testimony. "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (internal quotation marks and citation omitted). Yet, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *McDaniel*, 469 Mich at 412. Under MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), our Supreme Court held that a trial court does not abuse its discretion if its admission of other-acts evidence meets the three-part test articulated in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988), that was adopted in *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993). Under that test:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. [*Sabin*, 463 Mich at 55-56 (selected internal citations and quotation marks omitted).]

Defendant argues that the prosecution failed to establish that the other-acts testimony presented at his trial had any relevance for a purpose other than to prove propensity. We disagree. This Court would be hard-pressed to find a better example of the appropriate use of other-acts evidence.

Regarding the first criteria, the prosecution charged defendant with two counts of CSC-I involving an accomplice. MCL 750.520b(1)(d). Defendant admitted to sexually penetrating the victims; therefore, to convict defendant of these charges, the prosecution had to prove, *inter alia*, that defendant had reason to know that the victims were "mentally incapacitated, or physically

helpless" when he sexually penetrated them and that Stiff aided the assault.[1] See MCL 750.520b(1)(d)(*i*). The other-acts evidence logically showed that Stiff and defendant engaged in a common scheme or plan under which defendant would befriend women online and bring them to a bar where Stiff would meet defendant. Defendant would then provide the women with alcohol which he or Stiff had spiked with prescription medicine to cause the women to black out and/or lose control of their bodies. The codefendants would then transport the women to another location, usually Stiff's basement, where they would rape the women and steal from them.

As to relevance, the testimony from each of the other-acts victims was eerily similar to testimony of the victims in this case and supported strong inferences that defendant had actual knowledge that KW and SL were "mentally incapacitated, or physically helpless" at the time of the sexual penetration and that Stiff aided defendant in the assault. Defendant's claim of consent placed both of these elements at issue and the immediate victim's inability to recall many details of the offenses—given their forced incapacitation—rendered the other-acts evidence highly probative on these contested issues.

Finally, regarding undue prejudice, we note that the testimony did not involve a situation in which there was a danger that marginally probative evidence would be given undue weight. See *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). Again, the other-acts testimony was highly probative on several contested issues, namely whether defendant knew that the victims were physically or mentally incapacitated and whether Stiff aided the assaults. The other-acts evidence created strong inferences that defendant personally drugged the women or knew that Stiff was drugging the women and that the codefendants worked in concert to sexually assault multiple victims. Indeed, the strong similarities between the other acts and the conduct at issue lessened the danger that the jury would use the evidence for any purpose other than evaluating whether defendant and Stiff engaged in a common scheme to sexually assault women. Moreover, the trial court mitigated the danger that the jury would use the other-acts testimony for an improper purpose by instructing the jury that it could only use the evidence for specific nonpropensity purposes. See *People v Roper*, 286 Mich App 77, 106; 777 NW2d 483 (2009). The evidence was certainly prejudicial to defendant, but it was not unduly prejudicial.

In sum, the other-acts evidence was offered for a proper nonpropensity purpose, was relevant to contested issues at trial, and was not unduly prejudicial. The proper admission of relevant evidence does not violate defendant's right to due process. See *Estelle v McGuire*, 502 US 62, 70; 112 S Ct 475; 116 L Ed 2d 385 (1991). Therefore, defendant's argument that the trial court abused its discretion by admitting the evidence is wholly without merit.

---

[1] " 'Mentally incapacitated' means that a person is rendered temporarily incapable of appraising or controlling his or her conduct due to the influence of a narcotic, anesthetic, or other substance administered to that person without his or her consent, or due to any other act committed upon that person without his or her consent." MCL 750.520a(k). " 'Physically helpless' means that a person is unconscious, asleep, or for any other reason is physically unable to communicate an unwillingness to an act." MCL 750.520a(m).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant raises several claims related to the assistance of his counsel at trial. A claim of ineffective assistance of counsel presents "a mixed question of law and fact." *People v Hunter*, 493 Mich 1015; 829 NW2d 871 (2013). Appellate courts review questions of law de novo. *Id.* "We review the trial court's factual findings for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (internal citations omitted).

A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). A trial strategy is sound if defense counsel develops the strategy in concert with an investigation that is adequately supported by reasonable professional judgment in light of the facts, circumstances, pleadings, and law, attending the case. See *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

*Trial Preparation*. Defendant argues that his trial counsel failed to properly investigate the case and conduct discovery. Specifically, defendant maintains that defense counsel should have investigated favorable video evidence and should have requested an offer of proof with regard to Dr. Glinn's proposed testimony. With regard to the video evidence, a police report allegedly indicated that an officer reviewed a video from the bar, which showed defendant purchasing drinks from the bartender and giving one to KW. Defendant's appellate counsel argues that the video would show that he did not put anything in KW's drink. Appellate counsel, however, was unable to locate the video to personally review it for appeal. Moreover, defendant's appellate counsel did not submit the police report or an affidavit from the officer. Accordingly, we are unable to conclude that the video was available to defense counsel during discovery. Moreover, because the video is not available for review, we are unable to conclude that the video would have impacted defendant's defense.[2] Accordingly, this claim of ineffective assistance is without merit.

---

[2] Given the strength of the victims' testimonies and the other-acts evidence, we note that it is unlikely that evidence from the video would have aided defendant's defense. The evidence presented at trial compellingly showed that defendant acted in concert with Stiff on multiple occasions to drug and rape women and there appears to be no deviation from that common plan in the instant case.

With regard to Dr. Glinn's testimony, defendant has not presented any proposed expert that would undermine Dr. Glinn's testimony or identified any aspect of Dr. Glinn's testimony that defense counsel could have impeached with better preparation. Moreover, at the hearing on defendant's motion for a new trial, appellate counsel could not state how things might have been different had trial counsel been better prepared. Therefore, this claim is also without merit.

*Other Witnesses.* Defendant also argues that defense counsel should have called some of his immediate family and prior sexual partners to testify on his behalf. Defendant, however, did not offer an affidavit or other proof of the proposed testimony. Accordingly, defendant has failed to show that these witnesses would have, in fact, testified at trial and that their testimony would have been helpful to his defense. Thus, this claim is without merit.

*Right to Testify.* Next, defendant claims that defense counsel failed to properly advise him of his constitutional right to testify on his own behalf and improperly persuaded him to abstain from testifying. The record does not support this assertion. At trial, defendant intended to testify and the trial court created a record to ensure that his decision to testify was knowingly and intelligently made. When making the record, defendant agreed that his trial counsel had had numerous discussions with him about his case. He likewise agreed that defense counsel had explained the pros and cons of testifying. And when asked whether it was his "free choice" to testify, he responded, "Yes." He also agreed that defense counsel was not forcing him to testify or forcing him not to testify. The trial court then advised defendant about the implications of his decision to testify. Defendant agreed that defense counsel warned him that his criminal record could be used against him should he choose to testify. He also agreed that he understood that, if he testified, he could be cross-examined about things he may have told officers—including things he may have stated during his polygraph. He also stated that he understood that the prosecutor might be able to call rebuttal witnesses to rebut anything he stated on the stand. Finally, he agreed that he knew that his testimony could be used against him in another pending case. The court then went off the record for more than 20 minutes while defendant again conferred with defense counsel. Defendant then stated on the record that it was his decision not to testify. On this record, we cannot conclude that defendant's decision not to testify was coerced or uninformed in any way.

*Cross-Examination.* Defendant argues that defense counsel should have done a better job of cross-examining KW, particularly with respect to KW's allegedly inconsistent statements to police officers, her purportedly missing shirt, and desire to meet her ex-boyfriend. With regard to the last piece of evidence, KW's desire to meet her ex-boyfriend is completely irrelevant to the matter at issue. There is no indication in the record anywhere that KW's ex-boyfriend played any role in the assaults. Similarly, with regard to the purportedly missing shirt, whether KW's shirt was actually missing or whether she forgot to grab it when she left the morning after the assault was of little importance to the issues of consequence, i.e., whether defendant worked with Stiff to drug and rape KW and SL. Finally, with respect to the allegedly inconsistent statements to police officers, the record shows that KW included several details in her statements to officers that were more incriminating than the testimony she provided at trial. Defense counsel may, therefore, have refrained from cross-examining KW about details that might have invited more damaging testimony. Whether and how to cross-examine a witness are generally matters of trial strategy, *Rockey*, 237 Mich App at 76, and this Court will not second guess trial counsel on matters of trial strategy, *Russell*, 297 Mich App at 716. This claim is therefore without merit.

*Lesser-Included Offense Instruction*. Next, in his supplemental brief on appeal, defendant claims that the trial court erred when it determined that trial counsel's failure to request that the jury be instructed on the necessarily included lesser offense of third-degree criminal sexual conduct did not amount to ineffective assistance of counsel. Specifically, he maintains that defense counsel's testimony that she decided to pursue an all-or-nothing strategy was clearly incredible and belied by evidence that she did not discuss the defense with defendant and did not pursue it in her closing argument.

Contrary to defendant's contention on appeal, the trial court found trial counsel's decision not to request the instruction was because defendant did not want the instruction to be presented to the jury. The trial court noted that defendant was not interested in a "negotiated settlement" and recognized that, if the evidence did not support that defendant was aided by Stiff in the assault, the jury would have had to acquit defendant completely. It also recognized that reasonable attorneys could have disagreed about whether to pursue such a defense and avoid the possibility of a compromise verdict. The court noted that defense counsel did not specifically discuss lesser-included offenses with defendant, but nevertheless found that defense counsel would not have been authorized to seek an instruction on the lesser charge because defendant was aware of the possibility for a lesser offense and disclaimed any interest in it. Because the record supports the trial court's findings, we conclude that defendant's final claim of ineffective assistance is without merit.

*Evidentiary Hearing*. Relatedly, defendant argues that the trial court abused its discretion when it denied his motion for an evidentiary hearing to develop the record beyond that which has already been provided. This Court reviews for an abuse of discretion a trial court's decision whether to hold an evidentiary hearing. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. See *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008).

After defendant filed his appeal in this Court, he moved the trial court for a new trial on the basis of trial counsel's alleged ineffective assistance and asked for an evidentiary hearing on the issue. The trial court denied defendant's motion for a new hearing, noting that each claim of ineffective assistance had a reasonable counter-explanation. The trial court found that defense counsel was prepared for trial and effectively cross-examined witnesses. Accordingly, the trial court denied defendant's motion for a new trial. Defendant then moved this Court to remand to the trial court for an evidentiary hearing, which this Court granted regarding defendant's claim that trial counsel should have requested a lesser-included-offense instruction. Following the hearing, the trial court again denied defendant's motion for a new trial.

On appeal, defendant argues that the trial court erred by denying his motion for an evidentiary hearing on the remaining claims of ineffective assistance. We disagree. A defendant seeking an evidentiary hearing after conviction has the burden to demonstrate the need to develop the record, see *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009), and must do so "by affidavit or offer of proof regarding the facts to be established at a hearing," MCR 7.211(C)(1)(a).

In this case, defendant failed to properly support his motion for an evidentiary hearing with regard to each of his claims of ineffective assistance other than his claim that defense counsel should have requested a lesser-included-offense instruction, which this Court granted. He did not present any evidence that indicated that trial counsel could have contradicted Dr. Glinn's testimony or better cross-examined KW. Similarly, defendant did not present any offer of proof that any additional witnesses would offer beneficial testimony on his behalf or that any video evidence would have benefited his defense. The record belies defendant's assertion that he was improperly advised about his right to testify. Indeed, this Court has dismissed each of defendant's claims of ineffective assistance on the current record, without any need for any supplement. Accordingly, defendant has not shown that an evidentiary hearing was necessary.

## C. LIMITED CROSS-EXAMINATION

Next, defendant argues that the trial court violated his constitutional rights when its prevented defense counsel from cross-examining KW about whether she sent a nude image of herself to either of the codefendants before the night in question. Defense counsel attempted to ask the question, but the prosecutor objected that the question could not be asked without other independent evidence to support it. The trial court eventually stated that it would allow the evidence if it was linked up later, but opined that this was unlikely because it would require one of the codefendants to testify. "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich at 412. An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich at 565. Evidence is not admissible unless relevant. See MRE 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Defendant argues that the precluded question was relevant to determining whether KW consented to sex with defendant. Yet, consent exists only when there is "a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither 'mentally deficient,' 'mentally incapacitated,' nor 'physically helpless.' " *People v Khan*, 80 Mich App 605, 619 n 5; 264 NW2d 360 (1978) (internal citations omitted). Defendant was convicted under MCL 750.520b(1)(d) of sexually assaulting a person who was "mentally incapacitated, or physically helpless." Because an incapacitated person is incapable of giving consent to a sexual encounter, consent was not a defense to the charges. To the extent that defendant argues that KW's credibility was implicated by the question, we note that there was no question that KW and defendant were exploring a romantic relationship at the time of the offense. Any prior indication that KW gave defendant that she would be willing to engage in a sexual encounter with defendant, however, was nullified when defendant rendered KW incapable of providing consent. Accordingly, the trial court properly precluded the question under MRE 402.[3]

---

[3] Moreover, even if we were to conclude that the trial court erred in precluding the question, we would still find that defendant is not entitled to relief. The question had minimal probative value, if any, and, in light of the strength of the prosecution's other evidence—particularly the

## D. CUMULATIVE ERROR

Defendant argues that, even if no one error prejudiced his trial, the cumulative effect of the errors still warrants reversal. Defendant, however, has not identified any actual errors on appeal. Accordingly we affirm his convictions. See *People v Bahoda*, 448 Mich 261, 292-293 n 64; 531 NW2d 659 (1995).

## E. SENTENCING

Next, defendant challenges his sentences. As noted above, the trial court sentenced defendant outside of the range recommended under the sentencing-guidelines range to prison terms of 28 to 51 years for each conviction. Defendant argues that he is entitled to resentencing (1) because the trial court erred in calculating the guidelines range and (2) because the trial court's out-of-guidelines sentence was unreasonable. Neither claim has merit.

The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. We review for reasonableness the trial court's decision to issue an out-of-guidelines sentence. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

### 1. OV SCORING

*OV 1.* Defendant first argues that the trial court erred by assigning 20 points under offense variable (OV) 1. OV 1 addresses the aggravated use of a weapon. See MCL 777.31. Twenty points is appropriate under OV 1 when the "victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device." MCL 777.31(1)(b). " 'Harmful chemical substance' means a solid, liquid, or gas that through its chemical or physical properties, alone or in combination with 1 or more other chemical substances, can be used to cause death, injury, or disease in humans, animals, or plants." MCL 750.200h(i).

---

other-acts evidence— it would not be more probable than not that the alleged error was outcome-determinative. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

As already discussed, there was strong evidence tending to show that defendant introduced drugs into the drinks that he gave KW and SL. Both victims testified that they suffered serious side effects from these drugs, including blackouts, sickness, confusion, and loss of bodily control. Given that the drugs were prescription drugs with very serious side effects, the trial court could reasonably find that Humphrey's introduction of the drugs in combination with alcohol and without knowing his victims' history or susceptibility could have caused death or injury. See *People v Ball*, 297 Mich App 121, 124-125; 823 NW2d 150 (2012) (recognizing that any substance that is capable of causing harm at some dosage meets the definition of a harmful chemical substance). Consequently, the trial court did not err by scoring OV 1 at 20 points.

*OV 4.* Next, defendant challenges the trial court's 10-point score under OV 4. OV 4 scores for the psychological injury to the victim. MCL 777.34. Ten points is appropriate under OV 4 when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Even if the victim has not sought professional treatment, the trial court should score OV 4 at 10 points if the injury "may require professional treatment." MCL 777.34(2).

Here, KW gave a lengthy statement at sentencing about her mental health as a result of the assault. KW stated that although she had not sought professional treatment, not a day goes by that she does not think about how she was lucky to be alive. KW stated that she cried for months after the rape at "irrational moments," and that the codefendants left her "to deal with all the fear, the shame, depression . . . PTSD, anxiety and pain associated with being a survivor." She stated that she had not yet "figured out how to deal with all that [she] feel[s]" and noted that some days are "good, other days are bad." KW related that she has nightmares even years after the attack and that the hate, sadness, and fear that she lives with threatens to swallow her up. Plainly, KW's statement is sufficient to support the trial court's conclusion that KW suffered a serious psychological injury which may require professional treatment. See *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013). Indeed, it is likely that each of the codefendant's victims may suffer similar serious psychological impacts from the assaults.

*OV 10.* Defendant also challenges the trial court's 15-point score under OV 10. OV 10 scores for the exploitation of a vulnerable victim. MCL 777.40. Fifteen points is appropriate under OV 10 when the offense involved predatory conduct. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). Conduct is not predatory when it involves merely opportunistic or run-of-the-mill planning; instead, the conduct must be "behavior that is predatory in nature, precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action." *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011).

The record in this case provides strong evidence that defendant targeted KW. Pursuant to the plan he and Stiff enacted against five other women, defendant contacted KW online, convinced her to meet him in person, and then brought her to a bar. Defendant arranged for Stiff to be at the bar and pressured KW to drink a shot that he or Stiff had drugged. After successfully drugging both KW and SL, defendant and Stiff transported them to Stiff's home, which the women had not been to previously. In Stiff's basement, the men raped the victims, just as they

had numerous other victims. Because this Court cannot describe defendant's behavior as anything but predatory, we conclude that the trial court correctly scored OV 10 at 15 points.

*OV 19*. Finally, defendant argues that the trial court erred by scoring OV 19 at 10 points. OV 19 scores for, *inter alia*, the defendant's interference with the administration of justice. Fifteen points is appropriate under OV 19 when the "offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). Ten points is appropriate under OV 19 if the offender interfered with the administration of justice but did not use force or threaten force. MCL 777.49(c).

KW testified that, after the assault, defendant contacted her by text message and threatened to take legal action against her or release pictures of her if she followed through pressing charges. Defendant's threat was a clear attempt to interfere with the administration of justice. See *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016) ("OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense."). Defendant's threat, however, was not a threat of "force" and so the trial court's assessment of 10 points was appropriate. See *People v Smith*, 318 Mich App 281, 287-288; 897 NW2d 743 (2016). Accordingly, defendant has not demonstrated any error with respect to the calculation of his sentencing guidelines.

## 2. UNREASONABLE SENTENCE

Finally, defendant argues that the trial court's sentence was unreasonable. Defendant's sentencing guidelines recommended a sentence between 135 and 225 months (11.25 to 18.75 years) for each conviction. The trial court sentenced defendant outside the guidelines range to 28 to 51 years for each conviction.

A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 471. See also *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). When sentencing an individual defendant, the trial court must first score the sentencing guidelines and take them into account. *Lockridge*, 498 Mich at 391. If the trial court chooses to issue a sentence outside of the recommended range, it must justify the departure on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (internal citation and quotation marks omitted). Relevant factors for determining whether an out-of-guidelines sentence is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (internal citations omitted).

In this case, the trial court scored the sentencing guidelines and determined that Humphrey's prior record variable level was C and his OV level was VI, which provided for a recommended minimum sentence range of 135 to 225 months for a Class A felony. See MCL 777.62. The trial court recognized that the upper limit of the recommended range was about "18 years," but it felt that such a sentence was not "sufficient under these circumstances." The trial

-11-

court opined that the sentencing guidelines did not take into consideration the "temporal comprehensiveness" of defendant's scheme—namely, the rate at which he employed his scheme to assault numerous women. The trial court also felt that the guidelines did not sufficiently account for the number of persons affected by defendant's actions and did not take into consideration the larcenies the codefendants perpetrated against their sexual-assault victims. The trial court noted the depth of the psychological injuries to the two victims at issue as well as the probable psychological injuries to other victims who will likely never have a trial. The trial court opined that defendant was a "master manipulator" and found that the guidelines did not accurately reflect the amount of manipulation present in the codefendant's scheme. The trial court reasoned that defendant was a serial rapist and that sentencing defendant to life in prison would "pretty much punt[] off to the Parole Board" the decision when to release defendant. The trial court indicated that it wanted to restrict the board by imposing a numerical sentence, but rejected the prosecution's suggestion of a prison term of no less than 50 years as too high. It instead felt that a minimum sentence of 28 years was proportionate.

On this record, it cannot be said that the trial court abused its discretion. The trial court's sentence is approximately 50% longer than that recommended by the upper-end of the guidelines range. Nevertheless, the trial court justified this significant discrepancy between its sentence and the recommended range, on the record, extensively noting several factors that warranted a lengthier sentence. As calculated, defendant's OV level placed him deep within the highest level under the guidelines. The trial court's sentence was within a recommended range for an offender with a more extensive prior criminal record, which was appropriate considering that the record showed that defendant had sexually assaulted numerous women using the same scheme but had previously avoided punishment. This Court cannot overlook that defendant callously drugged and assaulted at least seven women before he was brought to justice. The trial court's sentence was harsh, but it was reasonable given the seriousness of defendant's conduct. Defendant's argument that his sentence was unreasonable is without merit.

## III. CONCLUSION

Finding no error requiring reversal in either defendant's representation at trial, the admission of evidence, or the trial court's sentence, we affirm defendant's convictions and sentences.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Jonathan Tukel

-12-